301 Ga. 552

FINAL COPY

S17A0177, S17X0178. GADDY et al. v. GEORGIA DEPARTMENT OF
REVENUE et al.; and vice versa.

BENHAM, Justice.

These appeals arise out of a complaint filed by four Georgia taxpayers in
which they challenge the constitutionality of Georgia's Qualified Education
Tax Credit, Ga. L. 2008, p. 1108, as amended ("HB 1133" or the "Bill").[1] The
complaint named as defendants the Georgia Department of Revenue and
Douglas J. MacGinnitie in his official capacity as State Revenue
Commissioner.[2] Later, the trial court permitted four individuals who identify
themselves as parents of children who have benefited from the tax-credit-

_____

[1] HB 1133 has been amended three times. See Ga. L. 2009, p. 816, § 6/HB 485; Ga. L. 2011, p.
529, § 2/HB 325; and Ga. L. 2013, p. 1061, § 33D/HB 283.

[2] Since the time the judgment was entered by the trial court in this case, Lynnette T. Riley has
succeeded Mr. MacGinnitie as Commissioner.

funded scholarship program that is challenged by the plaintiffs, and described below, to intervene as defendants.

HB 1133 set up a tax credit program ("Program") that allows individuals and business entities to receive a Georgia income tax credit for donations made to approved not-for-profit student scholarship organizations ("SSOs"). The Bill created a new tax credit statute for that purpose. See OCGA § 48-7-29.16. The Bill also added a new chapter to Title 20 of the Georgia Code to govern the creation and operation of these SSOs. See OCGA § 20-2A-1 et seq. In summary, the tax credit statute permits Georgia taxpayers to take a dollar-for-dollar credit against their Georgia income tax liability for donations to SSOs of up to $1,000 per individual taxpayer or $2,500 for married taxpayers filing jointly. OCGA § 48-7-29.16 (b).[3] Corporate taxpayers are allowed a credit of the actual amount donated or 75 percent of the corporation's income tax liability, whichever is less. OCGA § 48-7-29.16 (c). The total aggregate amount of tax credits allowed under the statute is currently limited to $58 million per tax year (OCGA § 48-7-29.16 (f) (1)) and the Commissioner of

---

[3] Other limitations apply to the amounts that can be credited against the taxpayer's tax liability (see OCGA § 48-7-29.16 (e)), and the statute sets out the process by which a taxpayer must apply for a tax credit and the process by which the Department of Revenue must process the application (see OCGA § 48-7-29.16 (f)-(i)).

2

Revenue is directed to allow these tax credits "on a first come, first served basis" (OCGA § 48-7-29.16 (f) (2)).  OCGA § 20-2A-2 sets forth the rules by which each SSO is to distribute the donations received for scholarships or tuition grants.  Generally speaking, the SSO is required to distribute the donated funds as scholarships or tuition grants for the benefit of students who meet certain eligibility requirements (OCGA § 20-2A-2 (1)), and the parent or guardian of each recipient must endorse the award to the accredited private school of the parents' choice for deposit into the school's account (OCGA § 20-2A-5).

Plaintiffs' complaint challenges the constitutionality of HB 1133 on three grounds.

- Count 1 alleges the Program violates the Educational Assistance section of the Georgia Constitution,[4] which authorizes the expenditure of public funds for scholarships and other forms of assistance for educational purposes,[5] and also specifies that contributions made in support of educational assistance programs established under this section may be

---

[4] Ga. Const. of 1983, Art. VIII, Sec. VII, Pars. I and III.

[5]  Id. at Par. I (a).

tax deductible for state income tax purposes.[6] Plaintiffs allege that the Program authorized by HB 1133 constitutes an educational assistance program as defined in this section of the Constitution, and allege that the scheme of the Program violates the Constitution in two ways — by permitting private non-profit SSOs to administer the Program, and by authorizing contributions to SSOs to be treated as tax credits as opposed to tax deductions.

- Count 2 alleges the Program violates the Gratuities Clause of the Georgia Constitution, which states that "[e]xcept as otherwise provided in the Constitution, . . . the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public . . . ."[7] Plaintiffs allege that the Program provides unconstitutional gratuities to students who receive scholarship funds under the Program by allowing tax revenue to be directed to private school students without recompense, and also that the tax credits authorized by HB 1133 result in unauthorized state expenditures for gratuities.

---

[6] Id. at Par. I (b).

[7] Ga. Const. of 1983, Art. III, Sec. VI, Par. VI (a).

- Count 3 alleges HB 1133 violates the Establishment Clause of the Georgia Constitution, which states: "No money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect, cult, or religious denomination or of any sectarian institution."[8] Plaintiffs allege that the Program takes money from the state treasury in the form of dollar-for-dollar tax credits that would otherwise be paid to the State in taxes, and since a significant portion of the scholarships awarded by the SSOs goes to religious-based schools, the Program takes funds from the State treasury to aid religious schools in violation of the Establishment Clause.

The complaint also alleges in Count 4 that the Department of Revenue has violated the statute that authorizes tax credits for contributions to SSOs by granting tax credits to taxpayers who have designated that their contribution is to be awarded to the benefit of a particular individual, in violation of OCGA § 48-7-29.16 (d) (1), and by failing to revoke the status of SSOs that have represented to taxpayers that their contribution will fund a scholarship that may be directed to a particular individual, in violation of OCGA § 48-7-29.16 (d)

---

[8] Ga. Const. of 1983, Art. I, Sec. II, Par. VII.

5

(2). In Count 5, plaintiffs seek mandamus relief to compel the Commissioner of Revenue to revoke the status of SSOs that have made representations that are allegedly unlawful pursuant to OCGA § 48-7-29.16 (d) (2). In Count 6, plaintiffs seek injunctive relief against the defendants to require them to comply with the constitutional provisions and statutory laws set forth in the complaint. In addition to mandamus relief and injunctive relief, plaintiffs seek a declaratory judgment that the Program is unconstitutional.

A number of dispositive motions were filed. Defendants filed a motion to dismiss the constitutional challenges as well as the prayer for injunctive relief for lack of standing, among other reasons. The intervenors filed a similar motion to dismiss as well as a motion for judgment on the pleadings with respect to these claims. Defendants sought dismissal of the claim for mandamus relief on the ground that it fails to state a claim on which relief could be granted. Plaintiffs filed a motion for judgment on the pleadings with respect to Count 4 (alleging violation of the tax code). After conducting a hearing on these motions, the trial court granted the motions to dismiss plaintiffs' constitutional challenges (Counts 1, 2, and 3) for lack of standing. The trial court granted the defendants' motion to dismiss Count 4 for failure to state a claim because no private right of action exists to enforce the tax credit

statute, and denied plaintiffs' motion for judgment on the pleadings on this count. The trial court found that plaintiffs' claims for declaratory and injunctive relief are barred by sovereign immunity. Defendants' motion to dismiss the claim for mandamus relief, however, was denied. As an alternative disposition to certain claims, the trial court granted the intervenors' motion for judgment on the pleadings as to the constitutional claims and the claim for injunctive relief.

This Court granted plaintiffs' application for discretionary appeal, and plaintiffs' appeal was docketed as Case No. S17A0177. The Georgia Department of Revenue and Lynnette T. Riley, in her capacity as Georgia Revenue Commissioner,[9] filed a cross-appeal which was docketed as Case No. S17X0178.

*Case No. S17A0177*

1. Plaintiffs/appellants argue that the trial court erred in concluding they lack standing to seek declaratory and injunctive relief to address alleged constitutional infractions. In general, to establish standing to challenge the constitutionality of a statute, a plaintiff must show actual harm in that his or

---

[9] See footnote 2, supra.

her rights have been injured.[10]  Here, plaintiffs claim they have standing to challenge the constitutionality of the statutes in question because they can show injury by virtue of their status as taxpayers.  They also claim standing is conferred by OCGA § 9-6-24.  Neither assertion survives scrutiny.

(a) *Standing as Taxpayers.*

First, plaintiffs assert the complaint shows they are Georgia taxpayers, and they argue that their status as taxpayers demonstrates they have been harmed by the unconstitutionality of the tax credits created by HB 1133.  "As a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights."  *Feminist Women's Health Center v. Burgess*, 282 Ga. 433, 434 (1) (651 SE2d 36) (2007).  Each of plaintiffs' allegations regarding the constitutionality of HB 1133 hinges on certain assumptions, the first one being that the grant of tax credits for student scholarships amounts to a diversion of public revenue that leaves the plaintiffs shouldering a greater portion of Georgia's tax burden.  Plaintiffs also assume that the tax credits amount to an unconstitutional expenditure of public funds because these funds actually represent tax revenue,

---

[10]  See *Perdue v. Lake*, 282 Ga. 348 (647 SE2d 6) (2007) and cases cited therein.

8

or because the revenue department bears the costs of administratively processing these credits.   But these premises are false.

(i)     Relying upon *Lowry v. McDuffie*,[11] plaintiffs argue they have standing as taxpayers due to the increased tax burden created by the tax credits granted to other taxpayers.  Plaintiffs' reliance on *Lowry* is misplaced.  *Lowry* involved a challenge to a tax exemption from ad valorem taxation provided to another taxpayer, and this Court concluded that because an illegal exemption would place a greater tax burden upon other taxpayers with respect to their share of the taxes levied by the local government entity, the plaintiff had standing to challenge the legality of the tax exemption.   But exempting property from ad valorem taxation removes property from the tax digest and may result in an increased millage rate on the remaining property to make up the difference.  The notion that a tax credit from state income tax liability decreases the total revenue pool and increases the tax burden on the remaining taxpayers, however, is purely speculative.  Governor Nathan Deal approved a $25 billion state budget for 2018,[12] and the Program currently caps tax credits at $56 million.  Even assuming an adverse effect on the state's budget, it

---

[11] 269 Ga. 202, 204 (1) n. 6 (496 SE2d 727) (1998).

[12] See Act No. 37, House Bill 44, approved on May 1, 2017.

requires pure speculation that lawmakers will make up any shortfalls in revenue by increasing the plaintiffs' tax liability. They could just as easily make up shortfalls by reducing the budget. Further, a tax credit that funds a program that encourages attendance at private schools might, in fact, create a tax savings by relieving public schools of the burden of educating the students who chose to attend private schools. This argument relating to budget shortfalls has been considered and rejected by other courts, both state and federal, as a basis for creating standing to assert a constitutional challenge to similar scholarship programs in other states that grant tax credits for contributions to private organizations that administer and grant private school scholarships. See, e.g., *Arizona Christian School Tuition Organization v. Winn*, 563 U. S. 125 (131 SCt 1436, 179 LE2d 523) (2011); *McCall v. Scott*, 199 S3d 359 (Fla. Dist. Ct. App. 2016), cert. denied 2017 WL 192043, Case No. SC16-1668 (Fla. Jan. 18, 2017).

(ii) We also reject the assertion that plaintiffs have standing because these tax credits actually amount to unconstitutional expenditures of tax revenues or public funds. The statutes that govern the Program demonstrate that only private funds, and not public revenue, are used. As demonstrated by HB 1133, the Program sets out a scheme by which (1) donations of private

10

funds by private individuals or entities, (2) made to non-governmental SSOs to be used for scholarships to private schools, whether secular or religious, (3) may be claimed as tax credits by individual and corporate taxpayers. Individuals and corporations choose the SSOs to which they wish to direct contributions; these private SSOs select the student recipients of the scholarships they award; and the students and their parents decide whether to use their scholarships at religious or other private schools. The State controls none of these decisions. Nor does it control the contributed funds or the educational entities that ultimately receive the funds.

To support their claim that tax credits are the equivalent of public funds, plaintiffs point to the Budget Act, OCGA § 45-12-70 et seq., in which "tax expenditure" is defined as "any statutory provision which exempts, in whole or in part, any specific class or classes of . . . income . . . from the impact of established state taxes, including but not limited to tax deductions, tax allowances, tax exclusions, tax credits, preferential tax rates, and tax exemptions. . . ." OCGA § 45-12-71 (15). That same definitions statute defines "appropriation" as an authorization by the General Assembly to expend a sum of money "from public funds . . . ." OCGA § 45-12-71 (2). And OCGA § 45-12-81 in the Budget Act expressly prohibits money to be drawn from the

11

state treasury "except by appropriation made by law . . . ." See also Ga. Const. of 1983, Art. III, Sec. IX, Par. I. It is therefore clear that "tax expenditures" are different from "appropriations," and only the latter involve money taken from the state treasury. Plaintiffs do not allege, and cannot demonstrate, that the Program's tax credits represent money appropriated from the state treasury. Moreover, to hold that "tax expenditures," as defined by the Budget Act, are the legal equivalent of appropriations would open up other tax advantages to constitutional scrutiny, such as tax deductions for contributions to religious organizations and tax exemptions offered to religious organizations, because they are also included within the Budget Act's definition of "tax expenditure." Plaintiffs acknowledge they are not advocating this result.[13] The Program does not involve the distribution of public funds out of the state treasury because none of the money involved in the Program ever becomes the property of the State of Georgia.

---

[13] The Arizona Supreme Court also considered and rejected a similar argument in a case in which it examined the merits of constitutional challenges made to a similar scholarship program in that state, expressing its concern that if tax credits constitute public funds, then other tax advantages like deductions and exemptions would have to be considered public funds, as well. *Kotterman v. Killian*, 972 P2d 606 (1999).

Because each of the constitutional provisions relied upon by plaintiffs involve the expenditure of public funds,[14] and the statutes that establish the Program demonstrate that no public funds are used in the Program, plaintiffs lack standing as taxpayers to assert these claims. Plaintiffs' complaint fails to show that they, or any taxpayers for that matter, are harmed by this Program. Likewise, we reject plaintiffs' argument that they have standing because public funds are illegally expended to administer the Program in that state employee time is used to process the filings for tax credits. See *City of East Point v. Weathers*, 218 Ga. 133, 137 (126 SE2d 675) (1962).

These conclusions are supported by cases from federal and other state courts that have considered the issue of taxpayer standing to challenge the constitutionality of similar scholarship programs established by legislatures in other states. For example, in *Arizona Christian School Tuition Organization*[15] taxpayers challenged the Arizona tax credit scholarship program in federal court on federal Establishment Clause grounds. The case reached the United

---

[14] The Education Assistance section of the Georgia Constitution expressly applies to "public funds." See Ga. Const. of 1983, Art. VIII, Sec. VII, Par. I (a). The Gratuities Clause refers to a donation of public funds or the forgiveness of a public debt. See id. at Art. III, Sec. VI, Par. VI (a). Georgia's Establishment Clause expressly applies only to funds "taken from the public treasury, directly or indirectly, in aid of any church . . . ." See id. at Art. I, Sec. II, Par. VII.

[15] Supra, 563 U. S. 125.

States Supreme Court, and that Court, examining the issue of standing under Article III of the United States Constitution, concluded the taxpayers lacked standing to assert their claims. The Supreme Court found that, absent special circumstances, standing to challenge the tax credit offered by the Arizona scholarship program could not be based on mere status as a taxpayer. In arriving at this conclusion, the Supreme Court rejected the same argument being made by the plaintiffs in this case that a tax credit depletes the government's coffers and that the plaintiffs' tax liability will necessarily increase to make up the deficit. See id. at 136. The Supreme Court also rejected the taxpayers' assertion that an exception to the general rule against taxpayer standing to bring a constitutional challenge existed, thereby creating a special circumstance, because the tax credit was effectively a governmental expenditure, an argument also made by plaintiffs in this case. See id. at 141-145.[16]

---

[16] We reject plaintiffs' argument that federal standing cases based on Article III are inapplicable in cases filed in Georgia courts. "In the absence of our own authority, we frequently have looked to United States Supreme Court precedent concerning Article III standing to resolve issues of standing to bring a claim in Georgia's courts." *Feminist Women's Health Center*, supra, 282 Ga. at 434 (1).

Plaintiffs argue that cases from other jurisdictions that have ruled on constitutional challenges to similar state programs are distinguishable because, unlike some other states, the Establishment Clause of the Georgia Constitution prohibits the taking of money from the public treasury either "directly or indirectly" for the aid of religious institutions.[17] But our sister state of Florida has an almost identically worded anti-use clause in its Constitution that prohibits the taking of public money either "directly or indirectly" to aid any religious institution; its legislature has adopted an almost identical scholarship program as the one involved in this case, funded by private donations that may be directly credited against income tax liability; and the dismissal of a taxpayer challenge to the constitutionality of that program for lack of standing was affirmed on appeal. See *McCall*, supra, 199 S3d 359.

In *McCall*, the Florida court rejected the argument that public funds are appropriated from the state treasury by virtue of the tax credit offered for donations to the scholarship program because the statute that governs the program clearly shows that all funds received by private schools under the program come from private contributions to a qualified scholarship

---

[17] See Ga. Const. of 1983, Art. I, Sec. II, Par. VII.

15

organization. Id. at 365-366 (III) (B). Consequently, the court held, the Florida statute demonstrates the program does not divert state revenues to private schools. The court in *McCall* also rejected the argument that but for the tax credits awarded to the taxpayer contributors, they would have remitted these funds to the state in payment of taxes, which would have benefited the challengers. Id. at 366 (III) (B). The Florida court held that the trial court was not required to accept the plaintiffs' unwarranted legal conclusions when ruling on the motion to dismiss. Id. These same or similar arguments that were rejected by the Florida court are made by plaintiffs in this case, and we also reject them.

In addition, plaintiffs assert that since some taxpayers who claim a tax credit under the Program will receive a tax refund, this means that public money has been used to finance the Program. This argument was rejected by the Arizona Supreme Court in *Kotterman*,[18] which noted that "under such reasoning all taxpayer income could be viewed as belonging to the state because it is subject to taxation by the legislature." We agree with that assessment. When the state refunds money for overpayment of taxes, it is not

---

[18] Supra, 972 P2d at 618, Par. 37.

16

remitting public funds but is returning the taxpayer's own money. For that reason, also, we reject plaintiffs' argument that the tax credits offered under the Program are public funds and that they therefore have standing as taxpayers to assert they are harmed because these funds are being illegally used for scholarships to religious schools.

Plaintiffs' complaint fails to demonstrate that plaintiffs are injured by the Program by virtue of their status as taxpayers. Consequently, plaintiffs' taxpayer status fails to demonstrate a special injury to their rights so as to create standing to challenge the Program.

(b) *Standing under OCGA § 9-6-24.*

Plaintiffs also claim standing is conferred by OCGA § 9-6-24 to any citizen attempting to enforce compliance with the Constitution. This statute states: "Where the question is one of public right and the object is to procure the enforcement of a public duty, no legal or special interest need be shown, but it shall be sufficient that a plaintiff is interested in having the laws executed and the duty in question enforced." By its terms this statute does not require the plaintiff to show any special interest to have standing to seek to enforce a public duty. But plaintiffs do not seek to enforce any statute. They seek to block enforcement of a statute by having HB 1113 declared unconstitutional.

17

OCGA § 9-6-24 does not grant standing to challenge the validity of a public duty authorized by statute, and therefore to attack the constitutionality of the statute. See *Moseley v. Sentence Review Panel,* 280 Ga. 646, 647 (1) (631 SE2d 704) (2006).

The trial court did not err in finding plaintiffs lack standing to pursue their constitutional claims, or their prayer for declaratory relief with respect to those claims, either by virtue of their status as taxpayers or by operation of OCGA § 9-6-24.

2. In addition to seeking declaratory judgment regarding the constitutionality of HB 1133, plaintiffs' complaint also seeks injunctive relief against the defendants to prevent them from approving tax credits under the Program. But that relief is predicated on plaintiffs' constitutional claims, which we have concluded they have no standing to pursue because they have not shown they have been injured by the Program. Consequently, they have no standing to pursue injunctive relief, either.[19] See *City of East Point*, supra,

---

[19] Further, this Court has previously noted that OCGA § 9-6-24 does not waive sovereign immunity for injunctive relief. See *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2) (b) (ii) n. 6 (770 SE2d 832) (2015) (noting that this Court's previous opinions holding that OCGA § 9-6-24 confers standing to seek enforcement of public duties by injunction stand abrogated by *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014)). We reject plaintiffs' assertion that the discussion in footnote 6 in *SJN* is mere dicta, or that we should overrule the discussion in that footnote.

218 Ga. at 137 (holding plaintiffs could not seek injunctive relief to bar the enforcement of an allegedly illegal ordinance where it does not appear they will be hurt by its enforcement).

*Case No. S17X0178*

3. In their cross-appeal, the Department of Revenue and Commissioner Riley, in her official capacity, appeal the lower court's order denying their motion to dismiss the claim for mandamus relief. In Count 5, plaintiffs seek an order compelling the Commissioner to comply with OCGA § 48-7-29.16 (d) (2), which prohibits an SSO from representing that a taxpayer can make a contribution for the benefit of a particular individual, and directs that the status of an SSO that improperly makes such a representation shall be revoked. The trial court concluded that the claim seeking to compel the Commissioner to comply with this subsection of the tax code states a claim upon which relief may be granted, and denied defendants' motion to dismiss that claim. We disagree and reverse.

The complaint references one example of representations made by a particular SSO on its website in 2014. That website is quoted as saying:

> **Scholarship Amounts**. Each month that we receive a donation for your school, your student will receive an equal share of the scholarship funds. *For example, if we receive $10,000 in March*

19

*for your school and there are 10 approved students, then each student at your school will receive a $1,000 scholarship at the end of March.*

(Emphasis in original.) Plaintiffs assert in their mandamus count that the defendants have failed to comply with the duty imposed by OCGA § 48-7-29.16 (d) (2) to revoke the status of any SSO that represents that in exchange for a contribution, a taxpayer will receive a scholarship for the direct benefit of a particular individual. But the example given does not appear to violate the prohibited representation. In fact, the quoted language does not state that a contributing taxpayer will receive a scholarship for the direct benefit of an individual student, and plaintiffs expressly concede this point in the complaint. Instead, the quoted language states that a contribution given for a particular school will be divided between all qualified students at that school who have been awarded a scholarship. Plaintiffs make no allegation that defendants have failed to revoke the status of any SSO that has made prohibited representations, but simply make the conclusory statement that defendants have failed to comply with the mandatory duty imposed on them by OCGA § 48-7-29.16 (d) (2).

As this Court has stated:

20

Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. It is a discretionary remedy that courts may grant only when the petitioner has a clear legal right to the relief sought or the public official has committed a gross abuse of discretion. In general, mandamus relief is not available to compel officials to follow a general course of conduct, perform a discretionary act, or undo a past act.

(Footnotes omitted.) *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 794 (3) (582 SE2d 109) (2003). A careful reading of the complaint shows that plaintiffs have not alleged an actual violation of the statute has occurred, either on the part of any SSOs or on the part of the defendants who are charged with the duty to enforce the statute against the participating SSOs. Consequently plaintiffs have failed to allege any clear legal right to mandamus relief.

Further, mandamus may not be used to compel these defendants to follow a general course of conduct. See *Solomon v. Brown*, 218 Ga. 508, 509 (128 SE2d 735) (1962). Consequently, plaintiffs cannot state a claim for mandamus relief to compel the Commissioner generally to enforce OCGA § 48-7-29.16 (d) (2) against SSOs. A mandamus plaintiff cannot simply assert that an official should be compelled, generally, to enforce the law, and that, in essence, is what plaintiffs assert in this action. See *Willis v. Dept. of Revenue*,

21

255 Ga. 649, 650 (2) (340 SE2d 591) (1986).  For these reasons, we hold the defendants were entitled to dismissal of plaintiffs' claim for mandamus relief.

Judgment affirmed in Case No. S17A0177.  Hines, C.J., Melton, P.J., Hunstein, Nahmias, Blackwell, and Boggs, JJ., and Judges David T. Emerson and David K. Smith concur.  Peterson and Grant, J.J., disqualified.  Judgment reversed in Case No. S17X0178.  Hines, C.J., Melton, P.J., Hunstein, Nahmias, Blackwell, and Boggs, JJ., and Judges David T. Emerson and David K. Smith concur.  Peterson and Grant, J.J., disqualified.

Decided June 26, 2017.

OCGA 48-7-29.16; constitutional question. Fulton Superior Court. Before Judge Adams.

Paul Hastings, William K. Whitner, S. Tameka Phillips, Andrea J. Pearson, for appellants.

Christopher M. Carr, Attorney General, W. Wright Banks, Jr., Warren R. Calvert, Alex F. Sponseller, Senior Assistant Attorneys General, Mitchell P. Watkins, Assistant Attorney General, for appellees.

Strickland Brockington Lewis, Frank B. Strickland, John J. Park, Jr.; Timothy D. Keller, Erica J. Smith, for Ruth Garcia, Robin Lamp, Teresa Quinones and Anthony Seneker.

Gerald R. Weber, Jr.; Lori H. Windham, Diana M. Verm; Smith, Gambrell & Russell, Perry J. McGuire; Ilya Shapiro; James P. Kelly III;

22

Caldwell, Propst & Deloach, Harry W. MacDougald; The Summerville Firm, James D. Summerville, Mecca S. Anderson; Taft Stettinius & Hollister, Steven C. Shockley, Russell Menyhart; Jay G. Wall, amici curiae.