**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 9, 2022**

# In the Court of Appeals of Georgia

A21A1752. STILLWELL v. TOPA INSURANCE COMPANY.

DILLARD, Presiding Judge.

Following injuries sustained in an automobile collision with a dump truck driven by Curtis Jones and owned by Curtis Jones Trucking ("CJ Trucking"), Keondrae Stillwell brought a direct action against Topa Insurance Co., the alleged motor-carrier insurer of the truck at the time of the accident. In her complaint, Stillwell argued that—under Georgia's Motor Carrier Act (GMCA)[1]—Topa was responsible for any judgment she obtained against Jones and CJ Trucking. Stillwell now appeals the trial court's dismissal of her action against Topa, arguing the court erred in finding that it lacked subject-matter jurisdiction over the case and relying on erroneous factual findings. For the reasons set forth *infra*, we reverse.

---

[1] *See* OCGA § 40-1-50 *et seq.*

The record shows that on August 18, 2018, Jones—who was driving a dump truck owned by CJ Trucking—collided head on with Stillwell's car, inflicting on her serious and permanent injuries. On February 9, 2018, Topa issued CJ Trucking a one-year commercial insurance policy for the dump truck. Stillwell's complaint alleged that when Topa evaluated Jones's application and issued the policy, it was aware CJ Trucking was operating as a motor carrier (despite the application indicating otherwise). She contended, *inter alia*, the policy or underwriting file contained a photograph of the dump truck—which displayed a Department of Transportation number—and that Topa knew CJ Trucking was registered as a motor carrier with the Federal Motor Carrier Safety Administration. Even so, it is undisputed Topa never made any of the required regulatory filings for insurance companies under the GMCA because it accepted CJ Trucking's representation that it was not a motor carrier.

On August 20, 2020, Stillwell filed a complaint, asserting, *inter alia*, a negligence claim against Jones[2] and, under Georgia's direct-action statutes,[3] seeking damages directly from Topa. In doing so, Stillwell argued Topa is liable for any

[2] Stillwell also sued several corporate entities and other individuals, but none of them are involved in this appeal.

[3] *See* OCGA §§ 40-1-112 and 40-2-140.

2

judgment she ultimately obtains against Jones or CJ Trucking under the GMCA.[4]

Topa answered the complaint, denying many of its allegations and asserting numerous affirmative defenses. And on the same day, Topa filed an OCGA § 9-11-12 (b) (1) motion to dismiss Stillwell's complaint for lack of subject-matter jurisdiction. Specifically, Topa claimed Stillwell did not have standing to file a direct action under OCGA §§ 40-1-112 and 40-2-140 because (1) Jones's policy was not a motor-carrier policy—and thus, it was not subject to liability under the GMCA; and (2) the relevant insurance policy was cancelled for non-payment on July 6, 2018 (approximately two months before the accident). Discovery ensued, and following a hearing on the matter, the trial court granted Topa's motion to dismiss for lack of subject-matter jurisdiction. This appeal by Stillwell follows.

A motion brought under OCGA § 9-11-12 (b) (1) "asserts the defense of lack of jurisdiction over the subject matter."[5] When a defendant challenges a plaintiff's standing by bringing a 12 (b) (1) motion, the plaintiff bears the burden of establishing

---

[4] *See* OCGA § 40-1-112 (c) ("It shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract.").

[5] *Douglas Cty. v. Hamilton State Bank*, 340 Ga. App. 801, 801 (798 SE2d 509) (2017) (punctuation omitted).

that jurisdiction exists.[6] A motion to dismiss for lack of subject-matter jurisdiction can "allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint" or "a factual challenge, which requires consideration of evidence beyond the face of the complaint."[7] And we review *de novo* a trial court's grant of a motion to dismiss due to lack of subject-matter jurisdiction.[8] We also construe the pleadings "in the light most favorable to the nonmoving party with any doubts resolved in that party's favor."[9] With this standard of review and these guiding principles in mind, we turn to Stillwell's specific claims of error.

1. Stillwell first contends the trial court erred in granting Topa's motion for dismissal due to lack of subject-matter jurisdiction because it raised the nonjurisdictional question of whether she had a cause of action against Topa, not any issue of subject-matter jurisdiction. We agree.

---

[6] *See id.*

[7] *Id.*; *accord Bobick v. Community & Southern Bank*, 321 Ga. App. 855, 860 n. 4 (3) (743 SE2d 518) (2013); *Pinnacle Benning v. Clark Realty Capital*, 314 Ga. App. 609, 618 n. 37 (2)(a) (724 SE2d 894) (2012).

[8] *See Douglas Cty.*, 340 Ga. App. at 801-02; *Bobick*, 321 Ga. App. at 856.

[9] *Douglas Cty.*, 340 Ga. App. at 802.

4

Specifically, Stillwell maintains the proper inquiry is not whether the trial court has authority to adjudicate direct actions against insurance carriers under the GMCA, but rather whether Topa is a defendant within the category of persons or entities the direct-actions statutes authorize plaintiffs to join as defendants. Georgia's direct-action statutes create standing for injured plaintiffs to sue insurers of motor carriers directly.[10] And the trial court's analysis, according to Stillwell, was one of statutory interpretation—*i.e.*, whether Topa is a motor-carrier insurer, thus authorizing her (the plaintiff) to sue the company under the GMCA. Topa, on the other hand, maintains

---

[10] *See* OCGA §§ 40-1-112(c) and 40-2-140; *Reis v. OOIDA Risk Retention Grp., Inc.*, 303 Ga. 659, 664 (814 SE2d 338) (2018) ("[T]he direct[-]action statutes provide a vehicle for directly naming a risk retention group as a party in a lawsuit."); *Hartford Ins. Co. v. Henderson & Son, Inc.*, 258 Ga. 493, 495 (371 SE2d 401) (1988) ("We find . . . that because appellees' complaint did adequately allege a direct action against [the insurance company], the Court of Appeals correctly denied appellant's motion to dismiss."); *Nat'l Indem. Co. v. Lariscy,* 352 Ga. App. 446, 449 (835 SE2d 307) (2019) ("The general rule in Georgia is that a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy. However, Georgia has codified statutory exceptions to this rule, the direct action statutes, which permit a direct action by an injured party against an insurance carrier which insures a motor carrier." (punctuation and citation omitted)); *Underwriters of Am. v. Williams*, 354 Ga. App. 551, 53 (2) (841 SE2d 135) (2020) ("OCGA § 40-1-112 (c), when read together with OCGA § 40-1-126, authorizes direct actions against insurers of motor carriers engaged in intrastate commerce . . . .").

that because the direct-action statutes create standing to sue, they are necessarily jurisdictional. But this argument ignores decisions carefully distinguishing constitutional standing—which *is* jurisdictional[11]—from questions about the scope of a statutory cause of action—which are *not* jurisdictional.[12]

---

[11] *See Sons of Confederate Veterans v. Newton Cty. Bd. of Commissioners*, 360 Ga. App. 798, 803-04 (2) (861 SE2d 653) (2021) (noting that constitutional standing is "a jurisdictional issue that must be considered before reaching the merits of any case and is a "doctrine rooted in the traditional understanding of a case or controversy.") (punctuation and citation omitted)); *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (II) (A) (136 SCt 1540, 194 LEd2d 635) (2016) (same); *Town of Chester, N.Y. v. Laroe Estates, Inc.*, __ U. S. __, __ (II) (137 SCt 1645, 198 LEd2d 64) (2017) (same); *Black Voters Matter Fund, Inc., et al. v. Kemp et al.; & vice versa* (four cases), ___ Ga. ___, ___, Case Nos. S21A1261 and S21A1262, 2022 WL 677669, at *4 (1) (2022) (noting that constitutional standing is a jurisdictional issue); *Perdue v. Lake*, 282 Ga. 348, 348 (1) (647 SE2d 6) (2007) ("As a general rule, standing must be determined at the time at which the plaintiff's complaint is filed in order to place an actual case or controversy within the purview of the court." (punctuation omitted)); *Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 259 Ga. 221, 221-22 (378 SE2d 460) (1989) (Per Curiam) ("The existence of an actual controversy is fundamental to a decision on the merits by this court."); *U-Haul Co. of Ariz. v. Rutland*, 348 Ga. App. 738, 743 (1) (824 SE2d 644) (2019) ("As it relates to standing, we view the requirement that there be an actual case or controversy at the time the complaint is filed."); *In the Interest of I. B.*, 219 Ga. App. 268, 269 (464 SE2d 865) (1995) (physical precedent only) (noting that "[t]hroughout Article VI of the Georgia Constitution, jurisdictional authority is given over 'cases'" and "'[c]ases' are live disputes, actual controversies" (footnotes omitted)).

[12] *See Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 740-41 (783 SE2d 614) (2016) (holding—without addressing the issue of subject-matter jurisdiction—that a plaintiff lacked the ability to bring a claim because he was unable to comply with the *statute* providing for the right of action at issue); *N. by Nw. Civic*

In Georgia, constitutional standing—more precisely, "Article VI standing"—is a threshold jurisdictional issue to enforce traditional limits placed on a court's "judicial power,"[13] as well as a question of subject-matter jurisdiction.[14] The

_____

*Ass'n, Inc. v. Cates*, 241 Ga. 39, 43 (3) (243 SE2d 32) (1978) (holding—without any reference to subject-matter jurisdiction—that taxpayer was not able to object to a particular tax adjustment because any objection to such an adjustment, under the relevant statute, must be made by the county tax officials and not by the individual taxpayer). *Cf. Foisie v. Worcester Polytechnic Inst.*, 967 F3d 27, 44 (II) (C) (1st Cir. 2020) ("Arguments concerning the absence of statutory standing, unlike arguments concerning the absence of constitutional standing, do not address a court's subject[-]matter jurisdiction but, rather, address the merits of the plaintiff's claims . . . Consequently, such arguments are more appropriately evaluated under the umbrella of Federal Rule of Civil Procedure 12(b)(6)") (citation omitted)).

[13] *See* GA. CONST. art. VI, sec. I, para. I ("The judicial power of the state shall be vested exclusively in the following classes of courts . . . ."); *Rampersad v. Plantation at Bay Creek Homeowners Ass'n, Inc.*, __ Ga. App. __, __, A21A1490, 2022 WL 189414, at *2 ("Georgia's Article VI courts are vested with the judicial power of the state." (punctuation omitted)); *see also Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008) (holding that "the constitutional and procedural concept of 'standing' falls under the broad rubric of 'jurisdiction' in the general sense, and in any event, a plaintiff with standing is a prerequisite for the existence of subject[-]matter jurisdiction."); *Connell v. Hamon*, 361 Ga. App. 830, 838 (863 SE2d 744) (2021) (same); *Wallace v. Chandler*, 360 Ga. App. 541, 545 (859 SE2d 100) (2021) (same); *In re Haney*, 355 Ga. App. 658, 660 (845 SE2d 380) (2020) (same); *id.* (noting that constitutional standing is a threshold jurisdictional issue); *see also Parker v. Leeuwenburg*, 300 Ga. 789, 793 (797 SE2d 908) (2017) (Peterson, J., dissenting) (noting that "[a] robust standing doctrine is necessary to ensure that courts remain the least dangerous branch of government, and that "[w]hen we decide only cases brought by parties seeking redress for actual harm, we limit ourselves to exercising only that power granted us by the Georgia Constitution").

requirement that jurisdiction "be established as a threshold matter 'spring[s] from the nature and limits of the judicial power' . . . and is 'inflexible and without exception.'"[15] As a result, we must consider whether a plaintiff has constitutional standing *nostra sponte*.

Georgia's constitutional-standing cases—which often rely upon the decisions of the Supreme Court of the United States[16]—have established that the "irreducible

---

[14] *See supra* note 13.

[15] *Steel Co. v. Citizens for a Better Env't*, 523 U. S. 83, 94-95 (III) (118 SCt 1003, 140 LEd2d 210) (1998) (Scalia, J.) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U. S. 379, 382 (4 SCt 510, 28 LEd 462) (1884)).

[16] *See, e.g., Gaddy v. Ga. Dept. of Revenue*, 301 Ga. 552, 555-56 (1) (a) (i) (802 SE2d 225) (2017); *Parker*, 300 Ga. at 792-93; *Oasis Goodtime Emporium I, Inc. v. City of Doraville*, 297 Ga. 513, 518 (2) (773 SE2d 728) (2015); *Sons of Confederate Veterans*, 360 Ga. App. at 803-04 (2). *But see Black Voters Matter Fund, Inc.*, *supra* at *12-13 (Peterson, J., concurring) (offering "observations on the lack of clarity in our standing doctrine," and noting that "[d]espite the textual differences between the United States Constitution and the Georgia Constitutions, we have frequently cited federal standing precedent in deciding Georgia cases without actually explaining why federal case law interpreting Article III of the United States Constitution should be considered persuasive authority for the different question of Georgia standing law."); *Sons of Confederate Veterans v. Henry County Board of Commissioners*, Supreme Court of Georgia Case No. S22C0039 (March 8, 2022) (granting writ of certiorari and noting that "[t]o the extent that OCGA § 50-3-1 (b) (5) creates a cause of action allowing any person, group, or legal entity to seek damages without a showing of individualized injury, *does the Georgia Constitution nevertheless require such plaintiffs to show individualized injury to have standing to sue?*") (emphasis

8

constitutional minimum" of standing consists of three elements.[17] To ensure a case is properly within the scope of a court's judicial power, plaintiffs must allege facts sufficient to show "(1) an injury in fact; (2) a causal connection between the injury and the causal conduct; and (3) the likelihood that the injury will be redressed with a favorable decision."[18] Here, Stillwell satisfies constitutional standing because (1)

---

supplied); *Sons of Confederate Veterans v. Henry County Board of Commissioners*, Supreme Court of Georgia Case No. S22C0045 (March 8, 2022) (same).

[17] *Spokeo, Inc.*, 578 U. S. at 338 (II) (A), *as revised* (May 24, 2016) (Alito, J.); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (II) (112 SCt 2130, 119 LEd2d 351) (1992) (Scalia, J.).

[18] *Sons of Confederate Veterans*, 360 Ga. App. at 804 (2) (quoting *Granite State Outdoor Advert., Inc. v. City of Roswell*, 283 Ga. 417, 418 (1) (658 SE2d 587) (2008)); *accord Lujan*, 504 U.S. at 560-61 (II); *see also In re Haney,* 355 Ga. App. at 660 ("To have standing, a party seeking relief must show: (1) he has suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the challenged wrong; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (punctuation omitted)); *Ga. Home Appraisers, Inc. v. Trintec Portfolio Servs., LLC*, 349 Ga. App. 356, 362 (2) (825 SE2d 833) (2019) (same).

her complaint alleges facts that, if true, show an actual injury due to defendant's negligence; and (2) the trial court can redress that injury by awarding her damages.[19]

Nevertheless, the trial court concluded it lacked subject-matter jurisdiction over the case because there was no underlying motor-carrier insurance policy—*i.e.*, Topa was not in the category of persons or entities the direct-action statutes authorized a cause of action against.[20] But the question of whether a plaintiff has a cause of action under a particular statute is an ordinary issue of statutory interpretation, not a jurisdictional question. Notably, the Supreme Court of the United States has explained that it is misguided to characterize that kind of question as concerning a

---

[19]*Nat'l Collegiate Student Loan Tr. 2007-3 v. Clayborn*, 357 Ga. App. 353, 354 (850 SE2d 787) (2020) ("A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of his or her claim."); *Ass'n of Guineans in Atlanta, Inc. v. DeKalb Cty.*, 292 Ga. 362, 364 (2) (738 SE2d 40) (2013) (same). OCGA § 40-1-112 (c), when read together with OCGA § 40-1-126, "authorizes direct actions against insurers of motor carriers engaged in intrastate commerce . . . ." *Williams*, 354 Ga. App. at 553 (2).

[20] The trial court found, and Topa argues, that it did not have subject-matter jurisdiction over Stillwell's action "because the insurance policy at issue was not a commercial[-]carrier policy." The court maintained that because there was no underlying motor-carrier insurance plan, the plaintiff had no standing to sue, and as a result, it lacked subject-matter jurisdiction over the case.

lack of subject-matter jurisdiction.[21] The scope of a statutory cause of action, then, is

not an appropriate inquiry to consider on a OCGA § 9-11-12 (b) (1) motion to

dismiss.[22] And given the trial court's clear subject-matter jurisdiction to hear the tort

and contract issues alleged in the complaint,[23] the trial court erred in holding that it

lacked subject-matter jurisdiction over Stillwell's direct action against Topa under the

GMCA.[24]

---

[21] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U. S. 118, 128 n.4, 129 (II-III) (134 SCt 1377, 188 LE2d 392) (2014) (Scalia, J.) (finding the question of whether a plaintiff "has a cause of action under the statute" is "a straightforward question of statutory interpretation," one that "does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case" (punctuation omitted)).

[22] *See supra* notes 11-12 & accompanying text.

[23] *See* OCGA § 15-7-4; *Thor Gallery at S. DeKalb, LLC v. Monger*, 338 Ga. App. 235, 236 (1) (789 SE2d 806) (2016) ("Georgia's state courts, created pursuant to OCGA § 15-7-2, exercise comprehensive jurisdiction over a wide range of claims, including, inter alia, . . . contract and tort cases, . . . *but excluding* only felony criminal cases, certain domestic cases, equity matters, and land title cases." (punctuation omitted)).

[24] The decisions relied upon by Topa in its appellate brief either address the issue of *constitutional* standing or do not substantively address the issue of subject-matter jurisdiction at all. *See, e.g.*, *Warth v. Seldin*, 422 U. S. 490, 498 (95 SCt 2197, 45 LEd2d 343) (1975); *Atlantic Specialty Ins. Co. v. Lewis*, 341 Ga. App. 838, 845 (802 SE2d 844) (2017); *Sherman v. Dev. Auth. of Fulton Cty.*, 324 Ga. App. 23, 23 (749 SE2d 29) (2013).

2. Given our holding in Division 1 *supra*, we need not address Stillwell's argument that the trial court's grant of Topa's motion to dismiss her complaint was based on erroneous factual findings.

For all these reasons, we reverse the trial court's grant of Topa's motion for dismissal under OCGA § 9-11-12 (b) (1).

*Judgment reversed. Mercier and Pinson, JJ., concur*.