MORRIS *et al. v.* CITY COUNCIL OF AUGUSTA *et al.*

No. 15640. NOVEMBER 13, 1946. REHEARING DENIED DECEMBER 2, 1946.

*Pierce Brothers,* for plaintiffs.

*W. D. Lanier, Wesley Killebrew, W. K. Miller,* and *William P. Congdon,* for defendants.

ATKINSON, Justice. (After stating the foregoing facts.) ■ Did the petitioners have such interest in the subject-matter as would authorize them to maintain this suit? It was alleged that they were citizens and taxpayers, and unless enjoined that the council and other named city officials would, without legal authority and upon an invalid ordinance, pay out the funds of the city. It was further alleged that the ordinance of April 30, 1946, wherein the salary of J. B. Kennedy was increased from $5000 per annum to $8000 per annum, had not become effective, for lack of being advertised as required by the city code, at the time he was permitted to be retired upon a pension; and that the pension predicated upon this salary was therefore illegal and void.

A citizen and taxpayer of a county or municipality has a pecuniary interest in the sum made up from taxes, and this interest will authorize him to seek to prevent an illegal diversion of tax money. This court has many times held that citizens and taxpayers of both counties and municipalities have such interest as will authorize them to maintain actions to enjoin the unlawful distribution of the public funds of counties and municipalities. *Blake* v. *Macon,* 53 *Ga.* 172; *Keen* v. *Waycross,* 101 *Ga.* 588 (3) (29 S. E. 42); *Wells* v. *Ragsdale,* 102 *Ga.* 53 (29 S. E. 165); *Koger* v. *Hunter,* 102 *Ga.* 76 (29 S. E. 141); *Mayor &c. of Leesburg* v. *Putnam,* 103 *Ga.* 110 (29 S. E. 602); *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (2) (36 S. E. 247); *Mitchell* v. *Lasseter,* 114 *Ga.* 275 (4) (40 S. E. 287); *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871 (6) (40 S. E. 1004, 57 L. R. A. 230); *Clark* v. *Cline,* 123 *Ga.* 856 (6) (51 S. E. 617); *Fluker* v. *Union Point,* 132 *Ga.* 568 (64 S. E. 648); *Henry* v. *Means,* 137 *Ga.* 153 (2) (72 S. E. 1021); *Renfroe* v. *Atlanta,* 140 *Ga.* 81 (78 S. E. 449, 45 L. R. A. (N. S.) 1173); *DeVaughn* v. *Booten,* 146 *Ga.* 836 (92 S. E. 629); *Dancer* v. *Shingler,* 147 *Ga.* 82 (2) (92 S. E. 935); *Brumby* v. *Board of Lights & Waterworks,* 147 *Ga.* 592 (1) (95 S. E. 7); *Board of Lights & Waterworks* v. *Dobbs,* 151 *Ga.* 53 (3) (105 S. E. 611); *Bennett* v. *LaGrange,* 153 *Ga.* 428 (4) (112 S. E. 482, 22 A. L. R. 1312). While there is another line of cases upon this subject which deny the right of a citizen and taxpayer to maintain a suit in equity against a county or municipality, to wit, *Reid* v. *Eatonton,* 80 *Ga.* 755 (6 S. E. 602); *Mayor &c. of Gainesville* v. *Simmons,* 96 *Ga.* 477 (23 S. E. 508); *Peeples* v. *Byrd,* 98

*Ga.* 688 (25 S. E. 677); *Blanton* v. *Merry,* 116 *Ga.* 288 (42 S. E. 211); *Hazleton* v. *Atlanta,* 147 *Ga.* 207 (4) (93 S. E. 202); *Sanders* v. *Ballard,* 160 *Ga.* 366 (127 S. E. 851); *Holt* v. *Fayetteville,* 169 *Ga.* 126 (149 S. E. 892); *Perkins* v. *Madison,* 175 *Ga.* 714 (3) (165 S. E. 811); *Wallace* v. *Atlanta,* 200 *Ga.* 749 (38 S. E. 2d, 596)—yet, each of the foregoing cases, some of which are cited and relied upon by the defendant in error, may be distinguished from the line of cases first above set forth, for the reason that they do not show that the party suing as a taxpayer was in danger of injury through loss of public funds or property. See also, in this connection, *Aiken* v. *Armistead,* 186 *Ga.* 368 (198 S. E. 237), where many of the foregoing cases are referred to and discussed. Accordingly, the petition was not subject to demurrer on this ground.

■ The petition alleged that the act of the General Assembly under which the city was proceeding to pay the pension had been repealed by another act of the legislature, and accordingly that no authority existed permitting the payment of this pension. Therefore it becomes necessary to consider these two acts and determine whether an act approved by the Governor on March 3, 1943 was repealed by an act approved by the Governor March 4, 1943.

The act approved March 3 is contained in Ga. L. 1943, p. 1239. Its title is as follows: "An act to amend the Charter of the City of Augusta, incorporated as the City Council of Augusta, by an act approved January 31, 1798 (Georgia Laws, 1798), as amended by the various amendatory acts thereof, so as to create a Board of Civil Service Commission for the City Council of Augusta, a Commissioner of Public Safety of the City of Augusta; and to prescribe the qualifications, powers, duties, and authority of said board and its members; to prescribe the qualification, powers, duties, and authority of said Commissioner of Public Safety; to fix the compensation of the members of said Board and the Commissioner of Public Safety; to fix the method of appointment and/or election of the members; to prescribe the method of procedure or removal of said Civil Service Commissioners from office; to prescribe the rules and regulations governing said Board; to fix the age limit of all firemen and policemen, including the chiefs and other officers of the police and fire department and provisions in reference to their retirement; to provide for the election of said commissioner of public safety, also all other officers and employees of the police and fire

departments of the City of Augusta; and for other purposes." This act covers approximately seventeen pages of the printed report and makes many provisions for the creation and operation of a Board of Civil Service Commission, as outlined generally in its title.

The act approved March 4 is contained in Ga. L. 1943, p. 1258. Its title is as follows: "An act to repeal an act entitled 'An act to create a Board of Civil Service Commission, for the City of Augusta in this State, to have entire control and management of the Police and Fire Departments of said city; to define its powers and duties, and for other purposes;' approved August 5, 1913 (Ga. L. 1913, pp. 612-18), as amended by an act approved August 24, 1929 (Ga. L. 1929, p. 852), as amended by an act approved March 13, 1935 (Ga. L. 1935, p. 897), as amended by an act approved February 19, 1941 (Ga. L. 1941, pp. 1072-73), as amended by an act approved February 19, 1941 (Ga. L. 1941, pp. 1076-1082), as amended by an act approved March 27, 1941 (Ga. L. 1941, pp. 1073-1076), and all other amendatory acts thereof, so as to abolish the Civil Service Commission of the City of Augusta and all other offices and positions held under said acts; and for other purposes." The act merely repeals the act of 1913, p. 612, as amended by such acts as are mentioned in the title, abolishes the offices therein created, and repeals all laws in conflict therewith.

Tracing the course of these two acts through the House and Senate, we find that they were introduced in the House on the same day and assigned numbers H. B. 500 and H. B. 501, and from this introduction to their final passage in both the House and Senate, and throughout the procedure in both bodies, they were considered in this order.

The act signed by the Governor on March 4, designated as H. B. 500 (Ga. L. 1943, p. 1258), was a repealing act, and the question here presented is whether it repealed the act approved by the Governor on March 3, designated as H. B. 501 (Ga. L. 1943, p. 1239). This repealing act repeals the act approved August 5, 1913 (Ga. L. 1913, p. 612), as amended by certain described acts of 1929, 1935, and three acts of 1941. The original act of 1913 was "An act to create a Board of Civil Service Commission, for the City of Augusta in this State, to have entire control and management of the Police and Fire Departments of said city; to define its powers and duties, and for other purposes." Nowhere in this

repeating act is there any reference to the act approved by the Governor on March 3, which was "An act to amend the Charter of the City of Augusta, incorporated as the City Council of Augusta, by an act approved January 31, 1798 (Ga. L. 1798), as amended by the various amendatory acts thereof, so as to create a Board of Civil Service Commission for the City Council of Augusta, a Commissioner of Public Safety of the City of Augusta; and to prescribe the qualifications," etc. It is apparent, therefore, that the act approved March 4 did not expressly repeal the act approved March 3. Neither was there any repeal by implication, as the act approved March 4 only repealed the act of 1913 and such acts as were amendatory thereto. The act approved March 3 was not an amendment to the act of 1913, but an amendment to the charter of the city. The act of 1913, and also the act approved March 3, 1943, each created a Board of Civil Service Commission; and though the act approved March 4 expressly repealed the act of 1913 as amended, it could not be so construed as at the same time repealing, by implication, the act approved March 3, merely because it also created a Board of Civil Service Commission.

"Repeals by implication are not favored, and never occur except where the later act is clearly and indubitably contradictory and contrary to the former act, and the repugnance is such that the two can not be reconciled." *Montgomery* v. *Board of Education of Richmond County,* 74 *Ga.* 41; *Moore* v. *State,* 150 *Ga.* 679 (104 S. E. 907); *Cornwell* v. *Atlanta Trust Co.,* 177 *Ga.* 303 (1) (170 S. E. 194); *Connor* v. *O'Brien,* 198 *Ga.* 221 (2) (31 S. E. 2d, 399).

■ The petition further alleged that, if it should be held that the act approved March 3, 1943 (Ga. L. 1943, p. 1239), was not repealed by the act approved March 4, 1943 (Ga. L. 1943, p. 1258), then the act is in violation of the State Constitution (Code, § 2-1817), as seeking to amend an act without distinctly describing the law to be amended; and also in violation of the constitutional provision (Code, § 2-1808), as referring to more than one subject-matter, or containing matter different from what is expressed in the title.

The act clearly described the law to be amended. Section 1 of the act states: "That in addition to the existing provisions of

the Charter of the City of Augusta, incorporated as the City Council of Augusta by an act approved January 31, 1798 (Georgia Laws, 1798), as amended by the various amendatory acts thereof, there is hereby added thereto the following provisions." It could not be said that this does not meet the requirements of the Constitution, which requires description, not transcription. *Adam* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893); *Fite* v. *Black,* 85 *Ga.* 413 (3) (11 S. E. 782); *Puckett* v. *Young,* 112 *Ga.* 578 (37 S. E. 880); *Cunningham* v. *State,* 128 *Ga.* 55 (57 S. E. 90); *Tison* v. *Doerun,* 155 *Ga.* 367 (2) (116 S. E. 615); *Ragans* v. *Ragans,* 200 *Ga.* 890 (39 S. E. 2d, 162).

Neither does the act refer to more than one subject-matter, or contain matter different from what is expressed in the title thereof. The fact that it sets up a Civil Service Commission, and also creates the office of Commissioner of Public Safety, to be elected by the commission with approval of the council, does not violate the constitutional provision against an act referring to more than one subject-matter. Nor is there anything in the act different from what is expressed in the title thereof. The act was entitled "An act to amend the Charter of the City of Augusta," and "for other purposes," and accordingly any legislation could constitutionally be embodied in the act which was germane to the general subject of amending the charter of the city. *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (1) (36 S. E. 247).

■ Having ruled that these citizens and taxpayers had the right to institute this action, that the act of 1943 (Ga. L. 1943, p. 1239) was not repealed, nor in violation of certain constitutional provisions, it now becomes necessary for us to determine whether, under this act and certain ordinances of the city, the allegations in the petition as to the awarding of the pension of $4000 per annum to J. B. Kennedy set forth a cause of action for injunctive relief.

The petition alleged that the ordinance of April 30, 1946, increased the salary of John B. Kennedy to $8000 and was not a valid ordinance upon which a pension of $4000, or one-half of the salary, could be allowed paid from the funds of the city, for the reason that he was by resolution placed upon the pension rolls on the same day that the ordinance raised his salary to $8000; and that such ordinance was then ineffective and inoperative under a provision of the city code requiring all ordinances to be ad-

vertised before taking effect, the section invoked being: "Sec. 766. Every ordinance shall be published three times, as soon as possible after its adoption; and no ordinance shall take effect until one day after the last of said three publications, unless council shall sepecifically provide in the ordinance a different time for it to take effect. The clerk of council shall certify on the original ordinance the fact and date of such three publications." A certified copy of this ordinance, contained in the petition, shows that it was published May 2, 3, and 4. Under these allegations, the petitioners were entitled to injunctive relief, and the trial court erred in sustaining a general demurrer to the petition. 37 Am. Jur. 763, § 151; 43 C. J. 543, § 843.

The attorneys for the defendants in error insist that the placing of John B. Kennedy on the pension rolls on a pension of $4000 was legal and valid, because the amount of the pension was predicated upon an ordinance fixing his salary at $8000, which had been adopted on April 17, 1946, and advertised April 19, 20, and 21, 1946. Such question is not before this court for determination. The petition alleges that the action taken was under the ordinance of April 30, nowhere making reference to an ordinance of April 17; and the petition being construed as against a general demurrer, the facts therein alleged must be admitted.

*Judgment reversed. All the Justices concur.*