**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 1, 2022**

# In the Court of Appeals of Georgia

A22A0508. WILLIAMS v. DEKALB COUNTY et al.

HODGES, Judge.

In this latest chapter of an ongoing dispute between a taxpayer and DeKalb County government, Edward Williams challenges the manner in which the DeKalb County Board of Commissioners introduced and passed a 2018 salary increase in alleged violation of the Open Meetings Act. See OCGA § 50-14-1 et seq. Following a prior appearance in, and remand to the trial court from, the Supreme Court of Georgia, see *Williams v. DeKalb County*, 308 Ga. 265 (840 SE2d 423) (2020) ("*Williams I*"), Williams filed a third amended complaint and now appeals an order from the Superior Court of DeKalb County granting DeKalb County CEO Michael Thurmond's motion to dismiss that amended complaint and granting a motion for judgment on the pleadings filed by present and former DeKalb County commissioners

("the commissioners").[1] Williams argues that the trial court erred in: (1) concluding that he lacked taxpayer standing to pursue claims against Thurmond; (2) finding that official and legislative immunity barred his claims under the Open Meetings Act against the commissioners in their individual capacities; and (3) failing to conduct an in camera review of certain e-mails between the commissioners and the DeKalb County attorney. For the following reasons, we affirm the trial court's judgment in part, vacate the judgment in part, and remand this case for further proceedings consistent with this opinion.

*Factual Background*. In *Williams I*, the Supreme Court recited the following facts:

> At about 2:00 p.m. on January 18, 2018, the DeKalb County Board of Commissioners announced that it would hold a "special call" meeting at 9:00 a.m. the following morning. The printed meeting agenda did not include a proposed pay increase for the commissioners or the Chief Executive Officer, but the commissioners discussed the desire for a pay increase at the meeting. The meeting minutes did not record the discussion, nor did they record any vote to take official action based on the discussion. The minutes also did not reflect the reason for calling the meeting on less than 24 hours' notice. About a week later, in an e-mail

---

[1] The commissioners are Gregory Adams, Stephen Bradshaw, Mereda Davis-Johnson, Kathie Gannon, Nancy Jester, Larry Johnson and Jeff Rader.

exchange with the subject line "Salary Meeting Follow-Up," the Board's presiding officer asked the Board's attorney to contact the Champion Newspaper, the legal organ of the county, and place an advertisement giving statutorily required notice of the intent to increase the salaries of the governing authority. The Board's attorney arranged for the notice to be published on three consecutive Mondays, February 8, 15, and 22, 2018, giving notice of the County's intent to increase the salary and other compensation of the governing authority at the regular meeting of the Board to be held on February 27, 2018, with the fiscal impact of the change estimated to be approximately $229,660.22 per year. The agenda published for the February 27 meeting, however, did not list the proposed salary ordinance or otherwise mention increasing the Chief Executive Officer's or commissioners' pay.

Well into the February 27 meeting, a commissioner moved to add the proposed salary increase to the agenda as a "walk-on" resolution, and the commissioners voted unanimously to add the salary ordinance to the agenda. The fiscal impact statement for the ordinance reflected that the Chief Executive Officer's pay would be set at 90 percent of a DeKalb County superior court judge's total compensation, and that the commissioners' base salary would increase from $40,530.55 to $65,000, effective January 2, 2019. Six commissioners voted in favor of the resolution, and one voted against it.

(Footnote omitted.) 308 Ga. at 267-268 (1).

*Williams' Claims and the Prior Appeal*. In general,[2] Williams argued that the commissioners violated the Open Meetings Act by failing to provide proper notice of their intent to pass a salary ordinance increasing their pay. *Williams I*, 308 Ga. at 268 (1). As a result, Williams filed a complaint against Thurmond and the commissioners seeking mandamus relief, declaratory judgment concerning the alleged illegality of the commissioners' actions, injunctive relief to prevent payment of the increased salaries, civil and criminal penalties under the Open Meetings Act, and litigation expenses and attorney fees. Id. The trial court denied Williams' mandamus petition, dismissed Williams' claims for declaratory judgment and injunctive relief against Thurmond and the commissioners because he lacked standing as a citizen or taxpayer, and dismissed his cause of action for civil penalties against the defendants in their individual capacities for violations of the Open Meetings Act for failure to state a claim. Id. at 266.

On appeal, our Supreme Court affirmed the dismissal of Williams' causes of action for declaratory relief against Thurmond and the commissioners and injunctive relief against the commissioners because, as to the declaratory judgment claim,

[2] For a more detailed account of the earlier procedural history of this case, see *Williams I*, 308 Ga. at 268-270 (1).

4

Williams alleged no uncertainty with regard to his future conduct, and because he lacked citizen or taxpayer standing to support his request for injunctive relief. *Williams I*, 308 Ga. at 270-274 (3). The Supreme Court also vacated the dismissal of the claim for injunctive relief against Thurmond and remanded the case to the trial court to properly analyze whether Williams had standing to raise such a claim. Id. at 274 (3) (b) (ii). Finally, the Supreme Court reversed the dismissal of Williams' claim for civil penalties against the commissioners in their individual capacity for violations of the Open Meetings Act upon finding that Williams, as a private person, had standing to enforce the civil penalty provisions of that act; that the allegations of Williams' complaint raised a claim for violation of the Open Meetings Act for which official immunity would not require dismissal; and that the commissioners were not entitled to legislative immunity. Id. at 274-279 (4).

*Current Claims and the Present Appeal*. On remand, Thurmond and the commissioners filed a joint motion to dismiss Williams' claims for lack of subject matter jurisdiction due to lack of standing. The defendants included with their motion three affidavits that primarily outlined the circumstances requiring addition of the salary legislation as a "walk-on" agenda item on short notice: generally, the affiants averred that the commissioners did not expect to add the ordinance to the February

5

20 agenda because a bill to raise the commissioners' salaries was progressing in the General Assembly. The legislation stalled, however, and when the commissioners learned that the bill would not receive a vote, they were forced to add the item to the February 27 agenda out of necessity in order to comply with guidelines requiring that salary ordinances must be passed before the beginning of the qualifying period for the next primary election — in this case, March 5, 2018. The affiants included: (1) Dan Baskerville, a senior policy director with Dentons, LLP, who provided "the DeKalb County Board of Commissioners with Weekly Legislative Updates, which include updates on meetings of interest including the meetings of the DeKalb County House and Senate Delegations, and updates and analysis on bills of potential impact and interest to DeKalb County[;]" (2) Dionne McKenzie, an administrative support manager for the DeKalb County Board of Commissioners, who testified that the commissioners approved an agenda for the February 27, 2018 regular meeting on February 20, 2018, but added the salary ordinance as a "walk on" item during the February 27 meeting; and (3) Erica Hamilton, the director of the DeKalb County Department of Voter Registration and Elections, who testified that the earliest qualifying date for candidates in the May 22, 2018 primary election was March 5, 2018.

6

In response, Williams filed a 90-page third amended complaint with over 2,000 pages of attachments in an attempt to bolster his causes of action. The commissioners filed responsive pleadings, to which they also attached the three supporting affidavits, and a motion for judgment on the pleadings. Relevant to this appeal, the trial court granted Thurmond's motion to dismiss, finding that Williams did not have taxpayer standing to pursue injunctive relief against Thurmond because he did not: (1) demonstrate that he suffered any particularized harm (alleging only that he "lost trust and faith that they would be able to follow the law"); (2) show an unlawful expenditure of public funds; and (3) demonstrate an illegal act by Thurmond, as the salary ordinance passed and has not been declared unconstitutional.

The trial court also granted the commissioners' motion for judgment on the pleadings, finding that: (1) the Open Meetings Act had not been violated; and (2) official and legislative immunity shielded the commissioners from Williams' suit. Finally, the trial court rejected Williams' request for an in camera inspection of certain e-mails between the county attorney and various commissioners that had been redacted for attorney-client privilege, concluding that Williams had not alleged that the e-mails had not been validly redacted pursuant to privilege. The trial court denied Williams' motion for reconsideration, and this appeal follows.

At the outset, we note that the only claims remaining for adjudication[3] are Williams' claims for injunctive relief against Thurmond, for civil penalties against the commissioners in their individual capacities for violations of the Open Meetings Act, and for an in camera inspection of certain e-mails between the county attorney and various commissioners (which was added as part of Williams' third amended complaint).

1. Williams first contends that the trial court erred in finding that he lacked standing to enjoin Thurmond from issuing payments pursuant to the salary increase ordinance. In particular, Williams asserts that he sufficiently demonstrated taxpayer standing because he was not required to show a particularized injury. We find no error.

Under Georgia law,

[w]e apply a de novo standard of review to a trial court's grant of a motion to dismiss. A motion to dismiss for failure to state a claim should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence

---

[3] This conclusion was the subject of some disagreement by the parties in the trial court on remand. However, it does not appear to be an issue on appeal.

8

within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citations omitted.) *Stewart v. Johnson*, 358 Ga. App. 813, 818 (4) (856 SE2d 401) (2021).

In *Williams I*, the Supreme Court vacated the trial court's order dismissing Williams' claims for injunctive relief against Thurmond and remanded the case to the trial court with instruction that it first consider whether Williams had taxpayer standing to raise claims against Thurmond.[4] 308 Ga. at 274 (3) (b) (ii). The injunctive relief Williams now seeks is to enjoin Thurmond from enforcing the salary ordinance or from issuing salary payments authorized by the ordinance. In reaching its conclusion, the Supreme Court in *Williams I* observed that Williams

> broadly asserted in his complaint that Thurmond "has a clear legal duty to supervise, direct and control the administration of the county government" as well as to "execute and enforce all ordinances." All of Williams' specific allegations, however, relate to Thurmond's role in the ordinance's passage, primarily his alleged failure to sign or to veto the ordinance passed by the commissioners. In his complaint, Williams did not focus on Thurmond's executive and administrative duties, and he made no specific allegations that those duties include the power to

---

[4] The trial court correctly noted that the issue of citizen standing has been resolved. See *Williams I*, 308 Ga. at 272 (3) (b) (i).

9

control the disbursement of funds paid as salaries once the ordinance had been enacted.

308 Ga. at 274 (3) (b) (ii). On remand, in partial response to the Supreme Court's observations, Williams filed the third amended complaint in which he alleged that Thurmond performed official acts related to the disbursement of salaries to the commissioners, including allegations that Thurmond "controls the disbursement and expenditure of funds once the [salary ordinance] was adopted" and that the "DeKalb County director of finance is not permitted to disburse funds under the salary ordinance . . . without [Thurmond's] approval."

Nevertheless, the trial court concluded that Williams did not have taxpayer standing "because he has not shown any particularized harm;" instead, Williams' only harm was a "lost trust and faith that they would be able to follow the law." The trial court also found that Williams lacked taxpayer standing because he did "not put forward any facts that would show the *unlawful expenditure* of public funds" because the salary ordinance had not been declared unconstitutional and lawfully became effective eight days after its passage. (Emphasis in original.)

As our Supreme Court has explained, "the question of standing is a jurisdictional issue." (Citation and punctuation omitted.) *Williams I*, 308 Ga. at 271 (3). To that end,

> a citizen-taxpayer has standing in equity to restrain public officers from performing acts which the law does not authorize. However, absent expenditures of public revenue or performance of a duty owed to the public, a citizen-taxpayer has no standing in equity unless he or she has special damages not shared by the general public.

(Citation and punctuation omitted.) Id. at 271 (3) (b). Williams' lack of *citizen* standing was resolved in *Williams I*, see id. at 271 (3) (a), leaving only an inquiry into his *taxpayer* standing, for which Williams argues that he need not demonstrate any specific harm resulting from passage of the ordinance. This is incorrect.

At first glance, there does not appear to be a universal "specific harm" component of taxpayer standing.[5] See generally *Savage v. City of Atlanta*, 242 Ga.

---

[5] It is not entirely clear whether *Williams I* holds that taxpayer standing depends on the specific circumstance — if the act to be enjoined is not authorized under the law, if it involves spending public revenues, or if it involves the performance of a duty to the public — and that no particularized harm need be shown if one of these circumstances is present. This conclusion would mean, however, that there would be no inquiry into the harm suffered by a taxpayer and that courts would have to evaluate the merits of a taxpayer's claim *before* deciding if the taxpayer had standing. Compare *Morris v. City Council of Augusta*, 201 Ga. 666, 669-670 (1) (40 SE2d 710) (1946).

11

671, 671-672 (251 SE2d 268) (1978) (taxpayer had standing to request that the City of Atlanta's commissioner of finance be enjoined from paying out public funds under the authority of certain ordinances); see also *Williams I*, 308 Ga. at 272-273 (3) (b) (ii) ("Under Georgia law, Williams' status as a taxpayer generally affords him standing to seek to enjoin the unlawful expenditure of public funds."); *King v. Herron*, 241 Ga. 5, 6 (1) (243 SE2d 36) (1978) (concluding that a "taxpayer of a municipality has standing to question the legality of the expenditure of public funds of the municipality"). However, there is at least some authority from our Supreme Court that such a requirement exists. See *Morris v. City Council of Augusta*, 201 Ga. 666, 669-670 (1) (40 SE2d 710) (1946) ("[t]his court has many times held that citizens and taxpayers of both counties and municipalities have such interest as will authorize them to maintain actions to enjoin the unlawful distribution of the public funds of counties and municipalities" where "*the party suing as a taxpayer was in danger of injury through loss of public funds or property*") (emphasis supplied); see also *Black Votes Matter Fund v. Kemp*, 313 Ga. 375, 391, 395-396 (870 SE2d 430) (2022) (noting "lack of clarity" in taxpayer standing jurisprudence and discussing "a less-individualized kind of injury as satisfying [taxpayer] standing requirement," including that taxpayer standing requires "*a showing of a kind of injury*, even though

12

that showing may be more relaxed than in other contexts") (emphasis suppled) (Peterson, J., concurring). This conclusion is buttressed by *Gaddy v. Ga. Dept. of Revenue*, in which the Supreme Court noted during a discussion of taxpayer standing that "[a]s a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights." (Citation and punctuation omitted.) 301 Ga. 552, 555 (1) (a) (802 SE2d 225) (2017).[6]

Therefore, our first inquiry must be whether Williams made "a showing of a kind of injury" or demonstrated a "danger of injury through loss of public funds or property."[7] We conclude that he did not. In fact, the *only* showing of a purported

[6] It is true that the Supreme Court concluded that the taxpayer plaintiffs in *Gaddy* did not have standing because private funds, rather than public funds, were being expended. 301 Ga. at 556-557 (1) (a) (ii). However, the Court did not retreat from or otherwise limit the general rule that "a litigant has standing to challenge the constitutionality of a law *only if the law has an adverse impact on that litigant's own rights*." (Citation and punctuation omitted; emphasis supplied.) Id. at 555 (1) (a). Moreover, the Court characterized the plaintiffs' claim that the General Assembly would "make up any shortfalls in revenue by increasing the plaintiffs' tax liability" as speculative because "[t]hey could just as easily make up shortfalls by reducing the budget." Id. at 556 (1) (a) (i).

[7] If Williams does not acquire taxpayer standing under this analysis, then we need not consider whether Williams demonstrated an "unlawful expenditure of public funds" or whether the party he seeks to enjoin may be so enjoined. See *Williams I*, 308 Ga. at 272-273 (3) (b) (ii) ("Williams' taxpayer status is not dispositive of whether he has pled a proper claim for injunctive relief as this case now stands. *Williams must also demonstrate that the injunctive relief he seeks from the parties he*

13

injury by Williams is not itself actionable. During an April 14, 2021 hearing, the trial court pressed Williams for a description of how he had been harmed by "the Open Meetings record" and "as a result of the actions that they took with regard to the February 27th meeting[.]" Williams ultimately replied that he "lost trust and faith that [the defendants] would be able to follow the law." While these statements appear to apply mostly to Williams' Open Meetings Act claims against the commissioners, rather than Thurmond's enforcement of the salary ordinance for which Williams claims standing, Williams' statements highlight the dearth of evidence of harm he suffered. As a result, we agree with the trial court's conclusion that Williams did not have taxpayer standing "because he has not shown any particularized harm."[8] See, e.g., *Gaddy*, 301 Ga. at 555 (1) (a); *Morris*, 201 Ga. at 670 (1); see also *Black Votes*

---

*has sued is capable of being provided by those parties and would actually prevent the act he seeks to prevent.*") (emphasis omitted and supplied).

[8] Although Williams contends there were other bases in the third amended complaint that the trial court should have considered, there is no ruling from the trial court to review and, in any case, Williams has not supplied meaningful argument to support them.

*Matter Fund*, 313 Ga. at 395-396 (Peterson, J., concurring). Therefore, we find no error.[9]

2. Next, Williams argues that the trial court erred in granting the commissioners' motion for judgment on the pleadings as to Williams' Open Meetings Act violation claims. Resolving this issue requires that we address multiple distinct questions, including whether the trial court properly considered the affidavits attached to the commissioners' answer to Williams' third amended complaint as "written instruments," see OCGA § 9-11-10 (c), in evaluating the commissioners' motion for judgment on the pleadings; if it did not, whether the commissioners' motion was properly converted to a motion for summary judgment; and, if so, whether the trial court correctly granted the motion. For the following reasons, we conclude that the affidavits are not "written instruments" and that, as a result, they represent matters outside the pleadings. Accordingly, the trial court converted the

---

[9] Even so, and perhaps equally dispositive, Williams has not shown that the salary ordinance represents an "unlawful expenditure of public funds." *Williams I*, 308 Ga. at 271 (3) (b). The trial court determined that Williams did not carry this burden in view of the proper enactment of the salary ordinance, because it had not been declared unconstitutional, and the fact that it went into effect eight days after its passage because Thurmond neither signed nor vetoed the ordinance, consistent with the local laws of DeKalb County.

15

commissioners' motion for judgment on the pleadings into a summary judgment motion, but failed to notify the parties of the conversion.

> On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings to determine whether the *undisputed* facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. *For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false.* But the trial court need not adopt a party's legal conclusions based on these facts.

(Citation and punctuation omitted; emphasis supplied.) *City of Albany v. GA HY Imports*, 348 Ga. App. 885, 887 (825 SE2d 385) (2019).

Generally, Williams' argument is based upon the commissioners' publication of an agenda on February 20 that did not include the salary ordinance, followed by the commissioners' addition of the ordinance to the agenda during the February 27 meeting as a "walk on" item out of necessity. OCGA § 50-14-1 (e) (1) provides that

> [p]rior to any meeting, the agency or committee holding such meeting shall make available an agenda of all matters *expected* to come before the agency or committee at such meeting. . . . Failure to include on the agenda an item which becomes *necessary* to address during the course of a meeting shall not preclude considering and acting upon such item.

16

(Emphasis supplied.)

> In *Williams I*, the Supreme Court found that

> Williams' complaint contains clear allegations that the commissioners expected to take up the proposed salary ordinance at the February 27, 2018 meeting; that the ordinance was intentionally omitted from the posted agenda; that the commissioners voted, while the meeting was in progress, to add the salary ordinance to the agenda as a "walk-on item"; and that nothing had occurred after the matter was omitted from the agenda that made it necessary to take up the ordinance at that meeting. The complaint also alleges that the commissioners voted on the salary ordinance without public discussion or debate. Williams' complaint, therefore, alleges a violation of the agenda requirements of OCGA § 50-14-1 (e) (1).

308 Ga. at 277 (4) (b). As a result, the Supreme Court determined that Williams, as a private person, had standing to request that civil penalties be imposed against the commissioners, 308 Ga. at 276-277 (4) (a); that Williams' complaint sufficiently alleged a violation of the agenda requirements of the Open Meetings Act and that civil penalties could be imposed against the commissioners, id. at 277-278 (4) (b); that Williams' complaint sufficiently alleged actual malice in violating the Open Meetings Act to preclude official immunity as a ground for dismissing the complaint,

17

id. at 278 (4) (c); and that the commissioners were not entitled to legislative immunity. Id. at 279 (4) (d).

On remand, after Williams filed his third amended complaint, the commissioners filed an answer to which they attached the three affidavits, including exhibits, that largely explained the commissioners' actions in approving the salary ordinance in an effort to demonstrate that there was no Open Meetings Act violation, claiming that the need to address the salary ordinance at the meeting was not evident when the agenda was published. As we have noted, the affidavits stated that the commissioners did not expect to add the salary ordinance to the February 20 agenda because a similar bill to raise the commissioners' salaries was progressing in the General Assembly. When the commissioners learned that the bill would not receive a vote, however, they were forced to add the item to the February 27 agenda to comply with guidelines requiring that salary ordinances must be passed before March 5, 2018, the date the qualifying period for DeKalb County's next primary election began.

The commissioners also filed a motion for judgment on the pleadings, relying upon the affidavits attached to their answer and asserting that Williams' Open Meetings Act violation claims should be dismissed because the commissioners did

18

not violate the Act or act with actual malice or bad faith. The trial court agreed, concluding that the commissioners had alleged "additional facts" demonstrating that they did not violate the Open Meetings Act when they added the salary ordinance to the agenda for the February 27, 2018 meeting out of necessity, that official immunity shielded the commissioners because Williams did not suffer any injury or harm, that legislative immunity likewise protected the commissioners because Williams offered no showing of bad faith, and that Williams did not state a claim for an Open Meetings Act violation based upon the publication of legal advertisements in the county legal organ and the availability of meeting minutes.

(a) *Motion for Judgment on the Pleadings*. In this appeal, Williams contends that the trial court erred in granting the commissioners' motion for judgment on the pleadings because the Supreme Court has already found Williams' argument sufficient to withstand the commissioners' prior motion to dismiss and that neither official nor statutory immunity barred his claims. Williams' position is based on the premise that, despite both parties filing amended pleadings on remand, the operative facts have not changed. In contrast, the commissioners point to new facts presented by the three affidavits, and argue that there was no Open Meetings Act violation

because the addition of the ordinance to the agenda was proper,[10] and that both official and statutory immunity were available to them.

(i) *Law of the Case.* It is well settled that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h). In this case, Williams' third amended complaint did not alter his allegations against the commissioners, which our Supreme Court has already reviewed and concluded that it "alleges a violation of the agenda requirements of OCGA § 50-14-1 (e) (1)." *Williams I*, 308 Ga. at 277 (4) (b). Therefore, unless the commissioners are able to demonstrate, through a proper exhibit to the pleadings, that Williams is not entitled to judgment on the pleadings, their motion would fail.

(ii) "*Written Instruments.*" At the core of the commissioners' motion for judgment on the pleadings are facts contained in the three affidavits, and the exhibits attached to them, by which the commissioners attempt to show that their addition of

---

[10] Having found that there was no Open Meetings Act violation, the trial court did not need to make any additional findings. However, the trial court entered alternative findings that, even if there was a violation, both official and legislative immunity shielded the commissioners from liability.

the salary ordinance as a "walk-on" agenda item did not violate the Open Meetings Act. It is clear the trial court considered these affidavits in reaching its conclusion that the Open Meetings Act was not violated and that "official and statutory immunity appl[y] to this case," going so far as to cite to them frequently throughout its order. For the following reasons, we conclude that the trial court erred in considering the affidavits in the context of a motion for judgment on the pleadings, and further conclude that the trial court's consideration of the affidavits converted the commissioners' motion into a summary judgment motion.

(A) *Rules of Construction and Plain Meaning*. Our analysis begins with the Civil Practice Act generally and OCGA § 9-11-10 (c) specifically. "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. Thus if the language of the statute is plain and unambiguous, we simply apply the statute as written." (Citations and punctuation omitted.) *DeKalb County Bd. of Tax Assessors v. Astor Atl, LLC*, 349 Ga. App. 867, 869 (826 SE2d 865) (2019). "In construing a statute, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." (Citation and

21

punctuation omitted.) *Smith v. Northside Hosp.*, 302 Ga. 517, 521 (1) (807 SE2d 909) (2017). Moreover, "it is an elementary rule of statutory construction that statutes relating to the same subject matter are in pari materia and must be construed together and harmonized whenever possible." (Citation and punctuation omitted.) *Long v. Dev. Auth. of Fulton County*, 352 Ga. App. 815, 821 (3) (b) (835 SE2d 717) (2019); see also *Mornay v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.*, 331 Ga. App. 112, 115 (3) (769 SE2d 807) (2015) ("[C]ourts may look to other provisions of the same statute to determine the meaning of a particular statutory provision. Context is a primary determinant of meaning.") (citation and punctuation omitted).

Relevant to this case, Georgia law makes clear that pleadings under the Civil Practice Act consist of

> a complaint and an answer; a third-party complaint . . .; and a third-party answer . . . . There may be a reply to a counterclaim denominated as such and an answer to a cross-claim, if the answer contains a cross-claim. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

OCGA § 9-11-7 (a). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." OCGA § 9-11-10 (c). There does not appear to be any relevant authority in Georgia defining the term "written

22

instrument."[11] Therefore, we turn to dictionaries to define the plain meaning of this term. See generally *Smith*, 302 Ga. at 521 (1) (consulting dictionaries as part of statutory construction); *Abdel-Samed v. Daley*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014) (same). In that regard, "instrument" is defined as "[a] written legal document

---

[11] Two other Code sections define "written instrument." See OCGA §§ 10-1-430, 45-17-12. In Part 5 ("Limited Edition Art Reproductions") of Article 15 ("Deceptive or Unfair Practices"), the definition of "written instrument" does not include affidavits. See OCGA § 10-1-430 ("'Written instrument' means a written or printed agreement, bill of sale, invoice, certificate of authenticity, catalogue, note, memorandum, or label describing a multiple which is to be sold, exchanged, or consigned by an art dealer."). However, OCGA § 45-17-12, identified by the heading "Authority of notaries who are stockholders, directors, officers, or employees of banks or other corporations to witness execution of written instruments[,]" contains a definition of "written instrument" to be narrowly limited to that Code section that does include affidavits. See OCGA § 45-17-12 (a) (2) ("As used in this Code section, the term . . . 'Written instrument,' without limiting the generality of meaning of such words, means deeds, mortgages, bills of sale to secure debt, deeds to secure debt, deeds of trust, contracts, legal pleadings, affidavits, certificates, or any other like instruments."); see also OCGA § 45-17-12 (b) ("It shall be lawful for any notary public who is a stockholder, director, officer, or employee of a bank or other corporation to take the acknowledgment of any party to any written instrument executed to or by such corporation."). Therefore, due to the express limitation contained in OCGA § 45-17-12 (a), the definition of "written instrument" in OCGA § 45-17-12 (a) (2) is not in pari materia with the Civil Practice Act and need not be construed consistently with the definition of "written instrument" as applied in OCGA § 9-11-10 (c). See generally *Long*, 352 Ga. App. at 821 (3) (b) (3) ("statutes relating to *the same subject matter* are in pari materia and must be construed together and harmonized whenever possible") (citation omitted; emphasis supplied); *Mornay*, 331 Ga. App. at 115 (3) ("Context is a primary determinant of meaning.") (citation and punctuation omitted).

that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Black's Law Dictionary 801 (7th ed. 1999). Therefore, it does not appear that the plain meaning of "instrument" includes affidavits, but that does not necessarily end our analysis.

(B) *Persuasive Authority*. Because OCGA § 9-11-10 (c) is based upon Federal Rule of Civil Procedure 10 (c), we also look to federal authority for guidance. See, e.g., *Watts v. Brittian*, 362 Ga. App. 93, 96 (1), n. 3 (866 SE2d 631) (2021) ("Because Georgia's Civil Practice Act is modeled on the Federal Rules of Civil Procedure, decisions of the federal courts interpreting the federal rules are persuasive authority.") (citation and punctuation omitted). Our review reveals something of a split among the authority.

On one hand, the Second and Third Circuits have concluded that an affidavit is not a "written instrument" as that term is used in Federal Rule of Civil Procedure 10 (c). See *Smith v. Hogan*, 794 F3d 249, 254 (I) (2d Cir. 2015); *Rose v. Bartle*, 871 F2d 331, 339 (II), n. 3 (3rd Cir. 1989). The courts reasoned that such an interpretation "is consistent with the general understanding of what a legal or a written instrument is, i.e., a 'legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate[.]'" (Citation omitted.)

24

*Smith*, 794 F3d at 254 (I). Furthermore, *Smith* added that an affidavit, which merely presents "a personal, narrative summary[,]"

> bears no resemblance to instruments such as contracts, registration statements, deeds or indentures. It is not a document that evidences legal rights or duties or sets forth the legal basis for his claims and therefore does not satisfy the definition of "written instrument."

Id. Of particular note, *Rose* observed that including affidavits in the definition of "written instrument" would "further blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted." 871 F2d at 339 (II), n. 3.[12] See also *Flowers-Carter v. Braun Corp*., 2019 U.S. Dist. LEXIS 40225, *5 - *7 (I) (C) (D. Ariz. 2019) (holding that consideration of a party's "self-serving affidavit that it was responsible for injecting into the record" would be "improper and would defeat the whole point of [motions for judgment on the pleadings]"); *Murry v. Ocwen Loan Servicing*, 2017 U.S. Dist. LEXIS 23869, *1, n.

[12] Consistent with this approach, the Eleventh Circuit has held that a newspaper article attached as an exhibit to an amended answer "should be considered as part of the pleadings for [motion for judgment on the pleadings] purposes, because that article is central to one of the claims and its authenticity is undisputed." See *Horsley v. Feldt*, 304 F3d 1125, 1134-1135 (II) (B) (1) (11th Cir. 2002). However, the court also determined that an incomplete interview transcript that was attached to the amended answer could not be considered in deciding the motion for judgment on the pleadings. Id. at 1135 (II) (B) (1).

1 (D. Colo. 2017) (finding that plaintiff's affidavits "are not 'documents' that are 'central to' his claims; instead, they provide unnecessary evidentiary material that is inappropriate at the pleadings stage"); cf. *Summerour v. City of Monroe*, 2022 Ga. App. LEXIS 150, *19 - *21 (2), 2022 WL 764967 (870 SE2d 848, 853-856 (2)) (2022) (finding that a video recording is not a "written instrument").

In contrast, in a line of cases exemplified by *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F3d 449, 452-453 (III) (A) (7th Cir. 1998), the Seventh Circuit embraced a broader definition of "written instrument" that included affidavits and letters, although the court offered little analysis for its decision.[13] Similarly, the Eighth Circuit summarily held that, in view of Rule 10 (c), an "accompanying affidavit should be considered as part of the *complaint*" on a motion to dismiss. (Emphasis supplied.) *Rasidescu v. Globe College*, 105 Fed. Appx. 121, 123 (8th Cir. 2004); see also *Chapman v. The Chronicle*, 2009 U.S. Dist. LEXIS 4260, *5 (A) (N. D. Cal. 2009) (holding that, on motion to dismiss, "a court may consider an affidavit attached to a complaint as part of the complaint").

---

[13] In *Occupy Columbia v. Haley*, the Fourth Circuit noted the split of authority, but declined to wade into the issue because the district court did not consider affidavits attached to the plaintiffs' third amended complaint and had instead "rel[ied] solely on the allegations in the Third Amended Complaint and those documents that are integral to the complaint." 738 F3d 107, 116-117 (III) (B) (4th Cir. 2013).

Finally, federal district courts suggest that the Fifth Circuit has adopted a hybrid approach in which affidavits of fact, as opposed to affidavits of opinion, that are attached to a pleading may be considered on a motion for judgment on the pleadings. See *Rivera v. Robinson*, 2019 U.S. Dist. LEXIS 48692, *10 - *12 (E. D. La. 2019);[14] *Ronaldo Designer Jewelry, Inc. v. Cox*, 2019 U.S. Dist. LEXIS 43785, *4 - *7 (II) (N. D. Miss. 2019) (granting motion to strike "to the extent it seeks exclusion of opinions in the affidavits, and [denying the motion] to the extent it seeks exclusion of facts in the affidavits"); see also *Malik v. Continental Airlines, Inc.*, 305 Fed. Appx. 165, 166 (I), n. 2 (5th Cir. 2008) (holding that affidavit attached to second amended complaint was "properly consider[ed] . . . in ruling on . . . motion to dismiss for failure to state a claim"); *Financial Acquisition Partners, LP v. Blackwell*, 440 F3d 278, 285-286 (II) (B) (5th Cir. 2006) (finding that trial court did not abuse its discretion in refusing to consider opinions and conclusions in an expert affidavit attached to an amended complaint).

---

[14] Even so, the court generally followed the more restrictive definition of "written instrument" applied by the Second and Third Circuits in evaluating what attachments may be properly considered on a motion for judgment on the pleadings. See *Rivera*, 2019 U.S. Dist. LEXIS 48692, *12 - *14 (striking victim's birth and death certificates, coroner's report, expert report, police report, photographs, and video recordings, but allowing insurance policies).

(C) *Analysis*. For a variety of reasons, we find most persuasive the approach adopted by the Second and Third Circuits and hold that an affidavit attached to an answer is not a "written instrument" for purposes of deciding a motion for judgment on the pleadings. See OCGA § 9-11-10 (c). First, we agree that an affidavit is inconsistent "with the general understanding of what a legal or a written instrument is, i.e., a 'legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate[.]'" (Citation omitted.) *Smith*, 794 F3d at 254 (I). Instead, an affidavit usually only offers "a personal, narrative summary" that "bears no resemblance to instruments such as contracts, registration statements, deeds or indentures." Id.

Second, we likewise agree that including affidavits in the definition of "written instrument" would "further blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief could be granted." *Rose*, 871 F2d at 339 (II), n. 3. Indeed, by excluding affidavits from "written instruments," we limit any tension between two venerable concepts of Georgia law: first, courts' duty, in deciding motions for judgment on the pleadings, to take all well-pleaded material allegations by the nonmovant as true and all denials by the movant as false, and second, the general proposition that a trial court may consider attachments to

28

pleadings. Were we to construe affidavits as "written instruments," trial courts could not give effect to both principles and would instead become triers of fact at the pleading stage. See *Caldwell v. Church*, 341 Ga. App. 852, 859 (2) (c) (802 SE2d 835) (2017) ("a trial court is not a trier of fact on a motion for judgment on the pleadings"), disapproved on other grounds by *Gen. Motors, LLC v. Buchanan*, No. S21G1147, 2022 Ga. LEXIS 163, at *28 (2) (d), n. 6, 2022 WL 1750716, at *9 (Ga. June 1, 2022). Such conflict would be untenable.

Finally, allowing affidavits as "written instruments" would permit parties to circumvent entirely legitimate motions for judgment on the pleadings simply by filing a self-serving affidavit. See *Flowers-Carter*, 2019 U.S. Dist. LEXIS 40225, *5 - *7 (I) (C) (holding that consideration of a party's affidavit would be "improper and would defeat the whole point of [motions for judgment on the pleadings]").

Therefore, for the foregoing reasons, we hold that affidavits attached to an answer as allowed by OCGA § 9-11-7 (a) are not "written instruments" as that term

is defined in OCGA § 9-11-10 (c)[15] and may not be considered in evaluating motions for judgment on the pleadings.[16]

(D) *Application*. Applying our holding to this case, we conclude that the trial court erred in considering the three affidavits presented by the commissioners in its consideration of their motion for judgment on the pleadings. Because the

---

[15] Our holding is specifically limited to affidavits attached to answers that are later used to support a defendant's motion for judgment on the pleadings. As a result, by nothing we have said here do we in any way alter the requirement to attach the necessary affidavits to a complaint, which is also a pleading, alleging professional malpractice. See OCGA § 9-11-9.1.

[16] The commissioners cite a string of Georgia cases purportedly holding that "a trial court may consider any exhibits attached to and incorporated into the pleadings" on a motion for judgment on the pleadings. However, in actuality, each of these cases supports our interpretation of OCGA § 9-11-10 (c) in that these cases concern documents, rather than factual assertions in affidavits, which were attached to the pleadings. See *Shelnutt v. Mayor & Aldermen of City of Savannah*, 333 Ga. App. 446, 448 (776 SE2d 650) (2015) (employee handbook); *Hendon Properties v. Cinema Dev.*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005) (parties' agreement to purchase real estate); *Bakhtiarnejad v. Cox Enterprises*, 247 Ga. App. 205, 207-208 (1) (541 SE2d 33) (2000) (documents associated with criminal investigation in defamation suit, including incident reports, affidavits in support of warrants, warrants, order recalling warrants, newspaper articles, and correspondence between counsel concerning a retraction); *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 832 (2) (503 SE2d 81) (1998) (company bylaws); *Shreve v. World Championship Wrestling*, 216 Ga. App. 387, 388 (1) (454 SE2d 555) (1995) (Consent and Release executed by the parties); see also *Stendahl v. Cobb County*, 284 Ga. 525, 526, n. 2 (668 SE2d 723) (2008) (136 pages of documents submitted with application for rezoning, or submitted either in support of or against application, but otherwise unclear what documents were attached to complaint in a title to land case).

30

commissioners attached the three affidavits to their answer, and then followed their answer with a motion for judgment on the pleadings based in part on the affidavits, accepting the commissioners' argument would mean the trial court would have had to ignore its responsibility to take Williams' allegations as true and accept instead the truth of the commissioners' affidavits, which it is not permitted to do. Stated differently, under the commissioners' logic, courts could not both treat the nonmovant's allegations as false and give positive effect to the movant's "self-serving affidavit that it was responsible for injecting into the record. . . ." *Flowers-Carter*, 2019 U.S. Dist. LEXIS 40225, *5 - *7 (I) (C).

The affidavits, therefore, could not be considered in support of the commissioners' motion for judgment on the pleadings.[17]

---

[17] A line of cases, seemingly beginning with *Seaboard Coast Line R. Co. v. Dockery*, 135 Ga. App. 540, 543 (218 SE2d 263) (1975), hold that "[w]here the party moving for judgment on the pleadings does not introduce *affidavits, depositions, or interrogatories* in support of his motion, such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted." See also *Gray v. McKenna*, 202 Ga. App. 685 (415 SE2d 295) (1992) ("We also note that where . . . the party moving for judgment on the pleadings does not present *evidence in support* of the motion, the motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.") (emphasis supplied); *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006); *Cox v. Turner*, 268 Ga. App. 305 (1) (601 SE2d 728) (2004); *State Soil & Water Conservation Comm.*, 252 Ga. App. 430, 436-437 (4) (a) (555 SE2d 800) (2001); *Sulejman v. Marinello*, 217 Ga. App. 319, 320 (2) (457 SE2d

31

(b) *Conversion to Summary Judgment Motion*. In view of our decision that the affidavits were not "written instruments," they, in effect, represented matters outside the pleadings. "[B]ecause the trial court considered matters outside the pleadings, [Williams'] motion for judgment on the pleadings was converted to one for summary judgment." (Citation and punctuation omitted.) *Sims v. First Acceptance Ins. Co. of Ga.*, 322 Ga. App. 361, 363 (3) (a) (745 SE2d 306) (2013); see also OCGA § 9-11-12 (c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all

251) (1995); *Christner v. Eason*, 146 Ga. App. 139, 140 (245 SE2d 489) (1978). The case upon which *Seaboard* relied, *White v. Augusta Motel Hotel Investment Co.*, 119 Ga. App. 351 (1) (167 SE2d 161) (1969), merely stated that "if nothing *extraneous* to the pleadings is presented or considered by the trial court [on a motion for judgment on the pleadings], [the motion] is equivalent to a motion to dismiss the complaint for failure to state a claim upon which relief can be granted." These cases do not require a different result in this case, as they stand for the unremarkable proposition that a motion for judgment on the pleadings is the general equivalent of a motion to dismiss. Moreover, these authorities are consistent with our regular admonition that trial courts should convert motions for judgment on the pleadings that contain certain supporting evidence into motions for summary judgment. Finally, these authorities are not inconsistent with our holding that attachments to pleadings which may be considered in support of a motion for judgment on the pleadings are limited to documents classified as a "written instrument," which is defined as "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Black's Law Dictionary 801 (7th ed. 1999); see also OCGA § 9-11-10 (c).

32

parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Code Section 9-11-56.").

> In such instances,

> the trial court has the burden of informing a plaintiff that it will be considering exhibits attached to the defendant's motion to dismiss and that the plaintiff would have no less than 30 days within which to submit his or her own evidence in response to the motion for summary judgment.

(Citation and footnote omitted.) *Islam v. Wells Fargo Bank, N.A.*, 327 Ga. App. 197, 201 (1) (757 SE2d 663) (2014); see also *Summerour*, 2022 Ga. App. LEXIS 150, *20 - *21 (2). In this case, it is obvious that the trial court not only considered, but gave considerable weight to, the three affidavits submitted by the commissioners — which we have concluded represent matters outside the pleadings, see OCGA § 9-11-12 (c), and which directly contradicted Williams' allegations in the complaint. As a result, the trial court's consideration of the affidavits converted Williams' motion for judgment on the pleadings into one for summary judgment. However, there is no indication in the record that the trial court ever explicitly informed Williams that it would be considering the affidavits. Nor is there any instance where Williams acquiesced in the trial court's consideration of the affidavits; to the contrary,

33

Williams objected to the affidavits when they were mentioned by the commissioners' counsel.[18] Compare *Sims*, 322 Ga. App. at 364 (3) (a). Finally, Williams did not introduce any evidence in response to the commissioners' motion for judgment on the pleadings, further demonstrating that Williams did not treat the commissioners' motion as one for summary judgment.[19] Compare, e.g., id. ("Where, as here, both parties submit evidence in connection with a motion for judgment on the pleadings, there is no indication of prejudice due to the trial court's failure to give notice of the actual nature of the pending action.") (citation and punctuation omitted).

Having considered the commissioners' affidavits "without first converting the [commissioners'] motion to one for summary judgment, giving full and fair notice thereof, and complying with its procedural requirements[,]" the trial court erroneously granted the commissioners' motion for judgment on the pleadings. *Summerour*, 2022 Ga. App. LEXIS 150, *21 (2); see also *Islam*, 327 Ga. App. at 200-201 (1); compare

---

[18] The first discussion of the affidavits during the April 21, 2021 hearing came in the context of the trial court attempting to identify what evidence was properly included in the record. Later in the hearing, Williams objected to the entry of the affidavits as evidence, which the trial court overruled without comment.

[19] That Williams introduced evidence in support of his motion for partial summary judgment is not material to this inquiry, as the motion focused on Thurmond's actions rather than Williams' claims against the commissioners in their individual capacity.

34

*Sims*, 322 Ga. App. at 363-364 (3) (a). Accordingly, we vacate that portion of the trial court's order and remand this case for further proceedings consistent with this opinion. *Summerour*, 2022 Ga. App. LEXIS 150, *21 (2).[20]

3. Finally, Williams asserts that the trial court erred in refusing to review "Salary Meeting Follow-Up" e-mails in camera.[21] We do not agree.

In June 2018, Williams obtained a copy of certain e-mails issued to and from the county attorney and various commissioners between January 19 and 31, 2018; however, the copies had been partially redacted based upon attorney-client privilege. In Paragraph 89 on page 37 of his third amended complaint, Williams "ask[ed] the [trial] [c]ourt to review the redacted email documents." Williams initially asserted that there was "uncertainty and controversy" whether the e-mails were privileged, but

---

[20] In view of our decision, the effect of which recognizes that the posture of the case has not changed, it follows that the Supreme Court's conclusions on the issues of official and legislative immunity remain applicable and we need not consider the parties' arguments on these points. See *Williams I*, 308 Ga. at 278-279 (4) (c) ("taking the allegations of Williams' complaint as true for the purpose of reviewing the dismissal of the complaint, the commissioners are not entitled at this stage to official immunity from the penalty provisions of the Open Meetings Act"), 279 (4) (d) ("Because Williams' complaint alleges that the commissioners deliberately conducted legislative business in an illegal manner, contrary to the requirements of the Open Meetings Act, the commissioners are not entitled to dismissal of the complaint based on legislative immunity.").

[21] Williams did not address this enumeration at oral argument.

35

then focused his contention upon the belief that the e-mails would show insight, motivation, and intent, including statements that the e-mails would show "some insight into how the public notice was authorized[,]" "the motivation and intent of the presiding officer and the other commission members[,]" and that "[i]t is in the public interest to know what [the] redacted words were and . . . to determine the truth." During a motions hearing, Williams again referred to the e-mail, claiming that the e-mail "will tell a lot about the motivation behind the reason how the legal ad got placed in the paper" and accusing the defendants of "a cover-up," but he did not address the propriety of the attorney-client privilege.[22]

Williams contends that by claiming there was "uncertainty and controversy over whether the redacted e-mails contained protected legal advice," he presented the issue to the trial court, and the trial court then failed to conduct a required in camera inspection. In response, the commissioners argue that "absent any specific objection to the exclusion of documents, it is not required to inspect [in camera] the documents produced in response to plaintiff's request." *Trammell v. Martin*, 200 Ga. App. 435, 437 (2) (408 SE2d 477) (1991).

---

[22] Although the trial court questioned Williams as to whether he had properly raised the request to "unredact [sic] that e-mail and share it with the Court" in a discovery motion, the trial court nonetheless adjudicated the request in its final order.

Outside of one paragraph in his third amended complaint, it does not appear that Williams filed a specific motion for an in camera review to challenge the validity of the redactions.[23] See OCGA § 50-18-73. Nor is there even a specific challenge to the validity of the redactions; rather, there is a nebulous statement that there is uncertainty concerning the redactions, followed by several statements outlining the suspected insightful content of the e-mails. In other words, Williams did not ask the trial court to evaluate whether the defendants *properly raised* the attorney-client privilege; rather, Williams' focus was the *content* of the e-mails. See OCGA § 50-18-72 (a) (41) ("In addition, when an agency withholds information subject to this paragraph, any party authorized to bring a proceeding under Code Section 50-18-73 may request that the judge of the court in which such proceeding is pending determine by an in camera examination whether such information was properly withheld[.]"). It also does not appear that the trial court directly addressed the request for an in camera inspection, and instead found that Williams had not challenged "the validity of redactions[.]"

---

[23] The trial court questioned Williams on this issue during the April 14, 2021 hearing, noting that "just mentioning something in a pleading doesn't mean that you get to get a ruling on it" and that the court had not "seen that actually be presented to the Court in a way that would require the Court to make a ruling or to grant an order."

37

Therefore, Williams' focus seems to be more on the allegedly conspiratorial content of the e-mails and less on whether they were properly designated as privileged; the latter is what is required to secure an in camera review. OCGA § 50-18-72 (a) (41) ("Attorney-client communications . . . may be obtained in a proceeding under Code Section 50-18-73 to prove justification or lack thereof in refusing disclosure of documents under this Code section provided the judge of the court in which such proceeding is pending shall first determine by an in camera examination that such disclosure would be relevant on that issue. In addition, when an agency withholds information subject to this paragraph, any party authorized to bring a proceeding under Code Section 50-18-73 may request that the judge of the court in which such proceeding is pending *determine by an in camera examination whether such information was properly withheld*.") (emphasis supplied). Furthermore, the statute suggests that an in camera inspection is discretionary rather than mandatory. See OCGA § 50-18-72 (a) (41); compare *Plante v. State*. 203 Ga. App. 33, 34 (1) (416 SE2d 316) (1992) (holding that "the trial court did not abuse its discretion in quashing [a subpoena] summarily, without undertaking an in camera review of the requested records").

Stated succinctly, before performing an in camera inspection, it appears the trial court simply made the threshold decision that Williams did not adequately challenge the validity of the attorney-client designation on the redacted e-mails. In this conclusion, we find no abuse of the trial court's discretion.

In sum, we conclude that Williams did not show any particular harm related to Thurmond's enforcement of the salary ordinance and, as a result, we affirm that portion of the trial court's order granting Thurmond's motion to dismiss Williams' third amended complaint. We also affirm the trial court's order rejecting Williams' request to conduct an in camera review of certain e-mails between various commissioners and the county attorney. However, we further conclude that the trial court erred in considering the affidavits attached to the commissioners' answer to Williams' third amended complaint in reviewing the commissioners' motion for judgment on the pleadings, without properly converting the motion to one for summary judgment. Therefore, we vacate that portion of the trial court's order granting the motion for judgment on the pleadings and remand the case to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded. Barnes, P. J., and Brown, J., concur.*